[No. 61867-9-I.   Division One.   June 1, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD LEE CASTILLO, *Appellant*.

*Jennifer J. Sweigert* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Eric J. Richey* and *Kimberly A. Thulin, Deputies*, for respondent.

¶1 Cox, J. — In August 2007, our supreme court expressly directed trial courts in this jurisdiction to use *Washington Pattern Jury Instructions: Criminal* 4.01 (WPIC), the pattern reasonable doubt instruction, to inform juries of the State's burden to prove beyond a reasonable doubt every element of a charged crime.[1] In May 2008, the trial court in this prosecution for first degree rape of child, over the objection of Edward Castillo, gave a different instruction for reasonable doubt. Because the trial court and this court are bound by the directives of the supreme court,[2] we reverse and remand with instructions.

---

[1] *State v. Bennett*, 161 Wn.2d 303, 306, 165 P.3d 1241 (2007) (citing 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 79 (2d ed. Supp. 2005)).

[2] *See State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) ("[O]nce this court has decided an issue of state law, that interpretation [of state statute] is binding on all lower courts until it is overruled by this court."); *Godefroy v. Reilly*, 146 Wash. 257, 259, 262 P. 639 (1928) ("When this court has once decided a question of law, that decision, when the question arises again, is not only binding on all

¶2 Seven-year-old R.G. spent the night with her seven-year-old cousin at her paternal aunt's home on a Thursday night in August 2007. R.G.'s aunt, Heather Stutzman, arranged for a roommate to babysit the girls during the evening because Stutzman was going to a party with Castillo, whom she was dating at the time. When Stutzman and Castillo returned from the party around 3 a.m., they "were both pretty drunk." They found R.G. and her cousin sleeping on Stutzman's bed. Castillo "kind of collapsed" onto the bed, and Stutzman left the bedroom for somewhere between 10 and 30 minutes.

¶3 R.G. remembers waking up and finding Castillo lying next to her on the bed. She testified that he touched her with his finger on the inside of her "potty place." R.G. told Detective Bouzek that "Eddie" first "started rubbing her butt under her shirt" and later "put his finger inside of her potty place." R.G. told her father that she cried after Castillo hurt her.

¶4 Stutzman confirmed that when she went back into the bedroom, R.G. was crying and wanted her mom. Stutzman saw Castillo lying next to R.G. and "shushing her" and "petting her hair" to calm her down. Stutzman moved R.G. to the floor and she went back to sleep.

¶5 Castillo confirmed that he was lying down on Stutzman's bed with R.G. and her cousin. However, he said both girls were under the covers. He denied that he ever touched R.G. inappropriately or tried to calm her down.

¶6 The State charged Castillo with rape of a child in the first degree. A jury convicted him as charged.

¶7 Castillo appeals.

## REASONABLE DOUBT INSTRUCTION

¶8 Castillo argues that the trial court erred by failing to give the reasonable doubt instruction specified in WPIC 4.01. We agree.

---

inferior courts in this state, but it is binding on this court until that case is overruled.").

¶9 Instructions must convey to the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt.[3] Jury instructions must define reasonable doubt and clearly communicate that the State carries the burden of proof.[4] Instructions must also properly inform the jury of the applicable law, not mislead the jury, and permit each party to argue its theory of the case.[5] It is reversible error to instruct the jury in a manner relieving the State of its burden to prove every element of a crime beyond a reasonable doubt.[6] A challenged jury instruction is reviewed de novo, in the context of the instructions as a whole.[7]

¶10 In *State v. Bennett*,[8] our supreme court instructed trial courts to use WPIC 4.01 to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt.[9]

¶11 Here, at a trial some eight months after the supreme court handed down its decision in *Bennett*, Castillo proposed WPIC 4.01 for the reasonable doubt instruction. From our review of the record and questioning of counsel at oral argument, it appears that neither the court nor counsel were aware of the supreme court's directive in *Bennett*.

¶12 The State proposed a different instruction in Castillo's trial. It appears from the trial judge's oral remarks that the source of the State's instruction was *State v. Cervantes*:[10]

---

[3] *Bennett*, 161 Wn.2d at 307 (citing *Victor v. Nebraska*, 511 U.S. 1, 5-6, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994)).

[4] *Id.* (citing *State v. Coe*, 101 Wn.2d 772, 787-88, 684 P.2d 668 (1984)).

[5] *Id.* (citing *State v. LeFaber*, 128 Wn.2d 896, 903, 913 P.2d 369 (1996)).

[6] *Id.* (citing *Sullivan v. Louisiana*, 508 U.S. 275, 280-81, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)).

[7] *Id.*

[8] 161 Wn.2d 303, 165 P.3d 1241 (2007).

[9] *Bennett*, 161 Wn.2d at 318.

[10] 87 Wn. App. 440, 942 P.2d 382 (1997).

I'll tell you where [the State's proposed instruction] comes from. I drafted this myself about 12 years ago. It went to the Court of Appeals and [was] affirmed at the Court of Appeals as an appropriate instruction. This was a combination between the State's burden instruction which is gobbley-gook [sic], it doesn't say anything, and the one that I used . . . when I was in federal court, in the military as a judge in the military, so I made a blend of the two. It was approved 12 years ago.[11]

Nevertheless, Castillo maintained his objection to the non-standard instruction, to which the court replied, "There's no error in giving the WPIC, I agree with you there, but the WPIC is goobley-gook [sic] in my mind. I'm not going to give it."[12]

¶13 The court's instruction 3 to the jury stated:

The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the Plaintiff and has the burden of proving each element of a crime charged beyond a reasonable doubt. While the rule as to reasonable doubt extends to each element of a crime charged, each particular fact advanced by the State which does not amount to an element need not be established beyond a reasonable doubt. For example, evidence of a person's motive for the doing of an act might, in some cases, be allowed by the court to be admitted in a trial since a person who is motivated to commit an act might be more likely to have actually committed the act. But motive is never an element of a crime, and therefor[e], if motive evidence is allowed in a trial, one's motive need not be proved beyond a reasonable doubt.

A defendant is presumed innocent. This presumption continues throughout the entire trial unless you find it has been overcome by the evidence beyond a "reasonable doubt".

A "reasonable doubt" is not a fanciful or ingenious doubt or conjecture, but an honest, conscientious doubt suggested by the material evidence or lack of it in the case. It is an honest misgiving caused by insufficiency of proof of guilt. Proof beyond a reasonable doubt does not mean proof to an absolute or

---

[11] Report of Proceedings (May 8, 2008) at 200.

[12] Report of Proceedings (May 8, 2008) at 201-02.

mathematical certainty, but it does mean proof which leaves you firmly convinced of the defendant's guilt. The proof need not exclude every hypothesis or possibility of innocence, but proof beyond a reasonable doubt must exclude every fair and rational hypothesis except that of guilt. A "reasonable doubt" is a doubt as would exist in the mind of a reasonably prudent person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, on the whole evidence, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.[13]

¶14 We start with consideration of *Bennett*. There, the supreme court considered challenges to a nonpattern reasonable doubt instruction (the *Castle* instruction) that this division of the court of appeals had previously upheld in *State v. Castle*.[14] The supreme court noted that this state has adopted pattern jury instructions to assist trial courts, and that these instructions have the benefits of thoughtful adoption and uniformity throughout the state.[15] The court then extensively discussed specific language in the challenged instruction, ultimately concluding that the *Castle* instruction satisfies due process.[16] Nevertheless, the court did not endorse the instruction.[17] Thus, the court affirmed Bennett's conviction, but also exercised its "inherent supervisory power to instruct Washington trial courts"[18] in the following respect:

We have approved WPIC 4.01 and conclude that sound judicial practice requires that this instruction be given until a better instruction is approved. Trial courts are instructed to use the WPIC 4.01 instruction to inform the jury of the government's

---

[13] Clerk's Papers at 69 (Instruction 3).

[14] *Bennett*, 161 Wn.2d at 306 (citing *State v. Castle*, 86 Wn. App. 48, 935 P.2d 656 (1997)).

[15] *Id*. at 307-08.

[16] *Id*. at 315.

[17] *Id*.

[18] *Id*. at 318.

burden to prove every element of the charged crime beyond a reasonable doubt.[19]

¶15 Here, the State properly concedes that the trial court erred in failing to follow the supreme court's directive in *Bennett*. Despite conceding error, the State argues that instruction 3 was harmless beyond a reasonable doubt. It argues that we should affirm Castillo's conviction based on the fact that the supreme court affirmed the conviction in *Bennett*, notwithstanding its directive to trial courts to use the pattern instruction.

¶16 For several reasons, we reject the State's harmless error argument. First, the supreme court issued its decision in *Bennett* on August 30, 2007, some eight months before Castillo's trial.[20] Thus, there can be no argument here that the court and counsel had insufficient time to learn of the express directive to lower courts to use WPIC 4.01.

¶17 Second, there is nothing ambiguous about the supreme court's directive: trial courts are to use *only* WPIC 4.01 as the reasonable doubt instruction "until a better instruction is approved."[21] The court neither said nor implied that lower courts were free to ignore the directive if they could find the error of failing to give WPIC 4.01 harmless beyond a reasonable doubt.

¶18 We note that the supreme court reasoned that, "[e]ven if many variations of the definition of reasonable doubt meet minimal due process requirements, the presumption of innocence is simply too fundamental, too central to the core of the foundation of our justice system not to require adherence to a clear, simple, accepted, and uniform instruction."[22] Recognizing that the supreme court allowed for the possibility that it might approve an instruction other than WPIC 4.01, if the instruction proved to be better than

---

[19] *Id.*

[20] *Id.* at 303.

[21] *Id.* at 318.

[22] *Id.* at 317-18.

the WPIC,[23] the question before us is whether instruction 3 in this case is better. We conclude that it is not.

¶19 First, the given instruction lacks the final sentence of the first paragraph of WPIC 4.01, which states, "The defendant has no burden of proving that a reasonable doubt exists [as to these elements]."[24] None of the other instructions of the trial court included a statement of this principle. The absence of this wording is significant in this case because the prosecutor's cross-examination and closing argument suggested Castillo needed to explain why R.G. might be lying.[25] Had WPIC 4.01 been given, the jury would have been fully informed of the proper standard of reasonable doubt. Instruction 3 falls short of the full statement of the correct standard.

¶20 The omission of the last sentence of WPIC 4.01 from the given instruction alone warrants the conclusion that instruction 3 is not better than the WPIC.

¶21 Second, Castillo argues that the instruction affirmatively misstates the burden of proof where it states that a reasonable doubt is not "a fanciful or *ingenious* doubt or conjecture."[26] He focuses on one dictionary definition of "ingenious," the one stating the word means "showing or calling for intelligence: marked by mental power."[27] He argues this definition, "showing or calling for intelligence," could lead a jury to conclude that an "ingenious," or "intelligent," doubt is not a reasonable doubt. Because it is obvious that an intelligent doubt is a reasonable one, according to Castillo, the effect of this instruction is to allow

---

[23] *Id.*

[24] WPIC 4.01 (alteration in original).

[25] Report of Proceedings (May 7, 2008) at 173 ("Can you think of any reason why she might be making this up?"); Report of Proceedings (May 8, 2008) at 229 ("And the defendant couldn't think of a reason why she would make this up. He has no burden here, of course, but he is here on the stand. He had an opportunity to tell us and he couldn't think of any reason.").

[26] (Emphasis added.)

[27] Brief of Appellant at 14 (citing Webster's Third New International Dictionary 1162 (1993)).

the jury to convict on an incorrect showing—where there is an ingenious (intelligent) doubt.

¶22 We first note that there is another dictionary definition of "ingenious," one that states the word means "marked by especial aptitude at clever discovering, inventing, or contriving."[28] Without considering whether or to what extent either of these two definitions is currently obsolete,[29] the difference in meanings is problematic.

¶23 We note further that we approved, with reservations, a very similar instruction in *Cervantes*.[30] But the word "ingenious" was not at issue in that case, and we had no basis to either approve or disapprove of the word. We also noted in that case that "the many reported cases examining reasonable doubt instructions illustrate the difficulties presented in drafting nonstandard instructions, in which particular words and phrases, in conjunction with other words and phrases, may follow the law of unintended consequences and create confusion rather than enlightenment."[31]

¶24 We need not decide in this case whether the use of the word ingenious in instruction 3 was proper. We need only point out that there is a potential for confusion in using the word "ingenious" in this instruction rather than using WPIC 4.01 as the reasonable doubt instruction.[32] For this additional reason, we conclude that this instruction is not an improvement over WPIC 4.01.

---

[28] WEBSTER'S, *supra*, at 1162. The third alternate definition is similar to the second: "marked by originality, resourcefulness, and cleverness in conception or execution." *Id.*

[29] *See, e.g.*, THE AMERICAN HERITAGE DICTIONARY 928 (1992).

[30] *Cervantes*, 87 Wn. App. at 448.

[31] *Cervantes*, 87 Wn. App. at 448 ("the many reported cases examining reasonable doubt instructions illustrate the difficulties presented in drafting nonstandard instructions").

[32] *See also Bennett*, 161 Wn.2d at 317 ("every effort to improve or enhance the standard approved instruction necessarily introduces new concepts, undefined terms and shifts, perhaps ever so slightly, the emphasis of the instruction").

¶25 To summarize, instruction 3 violates the express directive of the supreme court in *Bennett*. For the reasons that we have explained, the instruction is not an improvement over WPIC 4.01. It should not be used.

¶26 The State argues that there is no reported case that reverses on the basis that a trial court failed to use WPIC 4.01 as the reasonable doubt instruction. This is that case.

¶27 On remand, the court shall use WPIC 4.01 for the reasonable doubt instruction in any retrial of Castillo.

## OTHER ISSUES

¶28 Because we reverse and remand on the basis of the defective jury instruction, some of the other issues raised in this appeal are moot. Among those issues is Castillo's claim of ineffective assistance of counsel because his counsel failed to object to allegedly improper opinion testimony. The claim of cumulative error also falls within this category, as does his claim that the trial court abused its discretion in denying his challenge for cause of a potential juror.

¶29 Castillo also challenges for the first time on appeal certain testimony that he characterizes as improper opinion testimony. He also claims prejudice due to alleged prosecutorial misconduct. The State does not concede error with respect to these claims. Nevertheless, we do not conclude that it is necessary that we address these issues in order to prevent them from recurring in a retrial. The parties have thoroughly briefed these issues on appeal, and there should be no surprises on remand.

¶30 We reverse and remand with instructions for the trial court to use WPIC 4.01 in any retrial of Castillo.

SCHINDLER, C.J., and ELLINGTON, J., concur.