FILED
COURT OF APPEALS
DIVISION II

2013 JUL 16 AM 8: 44

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42696-0-II |
| Respondent, | |
| v. | |
| MICHAEL W. PICKERING, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Michael W. Pickering appeals his jury conviction for second degree burglary. Pickering claims, for the first time, that the prosecutor violated his right to a fair trial during closing argument when he (1) shifted the burden of proof, undermining the presumption of innocence; and (2) misrepresented the reasonable doubt standard. We affirm because Pickering fails to demonstrate that the prosecutor committed any error, much less flagrant and ill-intentioned misconduct. Accordingly, he has not preserved these arguments for review.

## FACTS

On May 9, 2010, Ocean Market and Gas ("the Hillbilly") employee Katrina Cahoon arrived at the store and discovered signs of a burglary. She noticed what she thought was fresh blood on the floor. Grays Harbor County Sheriff Sergeant Brad Johansson responded and found a hole in the wall that he thought may have been the entry point, as well as fresh blood. The DNA (deoxyribonucleic acid) profile of the blood drops matched that of Pickering.

The State charged Pickering with second degree burglary. At trial, Pickering stipulated that the DNA profile of the blood collected at the Hillbilly matched his DNA.

Before closing arguments, the trial court instructed the jury regarding the reasonable doubt standard, following 11 Washington Practice: Washington Pattern Jury Instructions: Criminal, 4.01, at 85 (3d ed. 2008) (WPIC). During his closing argument, the prosecutor argued, "[P]eople can talk about doubts all of the time and then you look at him and say, well, that's not reasonable at all. I mean that doesn't make sense. Yeah, you just say that but that doesn't mean I have to lose faith in my—my belief." Verbatim Report of Proceedings (VRP) (Oct. 11, 2011) at 49. The prosecutor then described abiding beliefs, "[Y]ou go and deliberate and you talk amongst each other that tests your belief and in the end your belief survives this whole process, it's an abiding belief." VRP (Oct. 11, 2011) at 50. The prosecutor also argued,

> You come out and you see the snow on the ground . . . . Somebody said, well, you don't know, maybe somebody took a snow machine and covered the country side with it. But you know that's just not practical and it doesn't raise a reasonable doubt in your mind about where the snow came from. So in this case if you trust in your belief and use your common sense you will come to the conclusion the defendant is, in fact, guilty.

VRP (Oct. 11, 2011) at 51-52. He then added that the reasonable doubt standard is "not something that you normally use in your everyday life." VRP (Oct. 11, 2011) at 49. Finally the prosecutor added,

> [T]he Court has given you an instruction kind of enlightening you what reasonable doubt means. And it states that if I have proven to you to an abiding belief that the defendant is guilty, I have proven to you beyond a reasonable doubt. And that's something that I think a – probably easier for you to understand because that's an idea that people deal with everyday. It's what do you believe. You know how strongly you hold your beliefs.

VRP (Oct. 11, 2011) at 49. Pickering did not object to these statements.

2

No. 42696-0-II

The jury convicted Pickering of second degree burglary. Pickering appeals.

ANALYSIS

PROSECUTORIAL MISCONDUCT

Pickering argues that the prosecutor committed flagrant and ill-intentioned misconduct by shifting the burden of proof and misrepresenting the reasonable doubt standard, such that a curative instruction would have been ineffective. Specifically, he claims that the prosecutor: (1) undermined Pickering's presumption of innocence and shifted the burden of proof to Pickering; and (2) misrepresented the reasonable doubt standard, improperly equating it to everyday decision making and common sense. But Pickering cannot raise these claims for the first time on appeal because he did not object to the prosecutor's arguments at trial, and he does not now demonstrate that the arguments were flagrant and ill intentioned, and incurable by a remedial instruction.[1]

A. Standard of Review

The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 3 and article I, section 22 of the Washington Constitution guarantee the right to a fair trial. *State v. Finch*, 137 Wn.2d 792, 843, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999). Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

---

[1] Pickering also argues that he may raise this issue for the first time on appeal under RAP 2.5(a)(3). He relies on *State v. Lynn*, 67 Wn. App. 339, 835 P.2d 251 (1992). *Lynn*, however, did not involve preserving a prosecutorial misconduct claim, 67 Wn. App. at 340, and we do not evaluate unchallenged prosecutorial misconduct claims under RAP 2.5(a)(3).

No. 42696-0-II

To prevail on a prosecutorial misconduct claim, a defendant must show that in the context of the record and all the trial circumstances, the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To show prejudice, a defendant must show a substantial likelihood that the misconduct affected the jury verdict. *Thorgerson*, 172 Wn.2d at 442-43. If a defendant fails to object to misconduct at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. Courts have generally found that misconduct is flagrant and ill intentioned when the prosecutor: (1) undermines the presumption of innocence by, for example, stating that a defendant is not entitled to the benefit of the doubt, *see State v. Warren*, 165 Wn.2d 17, 26-27, 195 P.3d 940 (2008), *cert. denied*, 129 S. Ct. 2007 (2009); (2) points out a defendant's or witness's assertion of his or her Fifth Amendment privilege, *see State v. Nelson*, 72 Wn.2d 269, 282-85, 432 P.2d 857 (1967); or (3) inserts racial bias into the proceedings. *State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011). We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

We focus less on whether the prosecutor's misconduct was flagrant and ill intentioned and more on whether the resulting prejudice could have been cured. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). We must decide whether there is a substantial likelihood that the misconduct affected the jury's verdict. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

4

## B. Issue Preservation

Because Pickering did not object to any of the prosecutor's remarks that he now challenges, he must first show that the prosecutor's misconduct was flagrant and ill intentioned. Pickering argues that employing arguments that have been repudiated by appellate courts is flagrant and ill-intentioned misconduct. He asserts that the prosecutor acted contrary to earlier appellate court directives in minimizing the presumption of innocence by shifting the burden of proof and misrepresenting the reasonable doubt standard. Pickering, however, fails to demonstrate that the prosecutor used improper arguments that our courts have repudiated.

Pickering cites two cases to support his claim that our courts have repudiated the types of arguments that he alleges minimized the presumption of innocence. *See State v. Fleming*, 83 Wn. App. 209, 214-15, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018 (1997); *Anderson*, 153 Wn. App. at 429-32. These cases, however, do not demonstrate that our courts have ever held that the prosecutor's arguments here, describing "abiding belief" and using the snow analogy, are improper. VRP (Oct. 11, 2011) at 49-50.

First, Pickering claims that the prosecutor minimized the presumption of innocence when he stated, "I mean people can talk about doubts all of the time and then you look at him and say, well, that's not reasonable at all. I mean that doesn't make sense. Yeah, you just say that but that doesn't mean I have to lose faith in my—my belief." VRP (Oct. 11, 2011) at 49. He claims the prosecutor also minimized the presumption of innocence by arguing, "[T]hen you go and deliberate and you talk amongst each other that tests your belief and in the end [if] your belief survives this whole process, it's an abiding belief." VRP (Oct. 11, 2011) at 50. Next, Pickering claims that the prosecutor minimized his presumption of innocence by using a snow analogy to

describe reasonable doubt. In discussing reasonable doubt, the prosecutor introduced a scenario in which one woke up to find fresh snow outside his home. He argued that though it is possible that someone "took a snow machine and covered the country side with it," this possibility is not practical and "doesn't raise a reasonable doubt in your mind about where the snow came from." VRP (Oct. 11, 2011) at 51.

Neither *Fleming* nor *Anderson*, which both involved variations of the improper fill-in-the-blank argument, applies to the prosecutor's arguments here. Because Pickering does not demonstrate that our courts have already repudiated the arguments the prosecutor made here, he does not show that the prosecutor made known-improper arguments, such that they constituted flagrant and ill-intentioned conduct. Absent a showing of flagrant and ill-intentioned conduct, Pickering may not raise his prosecutorial misconduct claim for the first time on appeal. *See Thorgerson*, 172 Wn.2d at 443.

Second, Pickering claims that the prosecutor misrepresented the reasonable doubt standard by equating it to everyday decision making and common sense. Pickering again cites three cases to support his claim that our courts have repudiated the types of arguments that he alleges improperly equate reasonable doubt to everyday decision-making and common sense. *See State v. Johnson*, 158 Wn. App. 677, 684-85, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011); *State v. Venegas*, 155 Wn. App. 507, 523-25, 228 P.3d 813, *review denied*, 170 Wn.2d 1003 (2010); *State v. Walker*, 164 Wn. App. 724, 731-33, 265 P.3d 191 (2011). None of these cases, however, demonstrate that our courts have ever held that the prosecutor's arguments here were improper.

Pickering argues that the prosecutor improperly argued, "[I]f I have proven to you to an abiding belief that the defendant is guilty, I have proven to you beyond a reasonable doubt." VRP (Oct. 11, 2011) at 49. He also claimed the prosecutor inaccurately articulated the standard, "abiding belief . . . [is] an idea that people deal with everyday. It's what do you believe. You know how strongly you hold your beliefs," and that the purpose of the trial is to "test your belief in my evidence . . . and [if] in the end your belief survives this whole process, it's an abiding belief." VRP (Oct. 11, 2011) at 50. Finally, he again challenges the prosecutor's snow analogy because he claims it improperly equates reasonable doubt to common sense.

Pickering relies specifically on *Anderson* to support his claim that these statements constituted improper conduct. In *Anderson*, the prosecutor argued that "beyond a reasonable doubt is a standard that you apply every single day." 153 Wn. App. at 425. The prosecutor compared the standard to decisions to leave children with a babysitter or change lanes on the freeway. *Anderson*, 153 Wn. App. at 425. We held that discussing reasonable doubt in the context of everyday decision making improperly "minimized the importance of the reasonable doubt standard and of the jury's role in determining whether the State has met its burden." 153 Wn. App. at 431.

Unlike *Anderson*, Pickering cannot show that the arguments here constituted improper conduct. Here, the prosecutor did not give examples of what constitutes everyday decision making, like selecting a babysitter, electing surgery, or changing lanes. Conversely, the prosecutor remarked that the reasonable doubt standard is "not something that you normally use in your everyday life." VRP (Oct. 11, 2011) at 49.

Next, the prosecutor's discussion of "what do you believe" as an abiding belief did not lower the standard of proof, especially when viewed in light of the context in which it was spoken. VRP (Oct. 11, 2011) at 49. The prosecutor argued:

> But the Court has given you an instruction kind of enlightening you what reasonable doubt means. And it states that if I have proven to you to an abiding belief that the defendant is guilty, I have proven to you beyond a reasonable doubt. And that's something that I think a—probably easier for you to understand because that's an idea that people deal with everyday. It's what do you believe. You know how strongly you hold your beliefs.
> Now, abiding belief is a belief that survives this process.

VRP (Oct. 11, 2011) at 49-50. The prosecutor was reiterating the abiding belief concept. Accordingly, in the context of the whole record, Pickering does not demonstrate how the prosecutor, like the prosecutor in any of the other cases he cites, improperly lowered the burden of proof.

Also, the prosecutor's remarks to the jury to "test your belief in my evidence" and that if "in the end your belief survives this whole process, it's an abiding belief" are not misstatements of the law. VRP (Oct. 11, 2011) at 50. 11 WPIC 4.01 instructs the jury that reasonable doubt is "such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence." 11 WPIC 4.01, at 85. 11 WPIC 4.01 further states, "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." 11 WPIC 4.01, at 85. By informing the jury that an abiding belief is one that "survives this whole process," the prosecutor was reiterating a valid jury instruction that an abiding belief is one that the jury has after considering all of the evidence presented at trial. VRP (Oct. 11. 2011) at 50. Therefore, the prosecutor did not improperly misstate the law.

8

Moreover, the prosecutor's snow analogy did not improperly state the law. He used the snow analogy to illustrate reasonable doubt. He remarked that if a juror woke up and looked out the window to see fresh snow outside, the juror would know beyond a reasonable doubt that it snowed overnight. The prosecutor argued that despite not seeing it snow with the juror's own eyes, the juror would know it snowed because she has common sense. In this context, common sense did not minimize the reasonable doubt standard.

Ultimately, here the trial court instructed the jury that if after fully, fairly, and carefully considering all of the evidence, the jury has an abiding belief in the truth of the charge, the jury is satisfied beyond a reasonable doubt. Therefore, the prosecutor's statements were nothing like those in *Anderson* or any of the other cases Pickering cites, and he does not demonstrate that they were otherwise improper. In the absence of a showing that the prosecutor's comments were in error, much less flagrant and ill-intentioned misconduct, Pickering failed to preserve this issue for appeal. *See Thorgerson*, 172 Wn.2d at 443.[2]

---

[2] Even if Pickering could show that the prosecutor committed flagrant and ill-intentioned conduct thus preserving the argument for review, he must still demonstrate that the conduct could not have been cured by an instruction. Pickering relies on *State v. Castillo*, in which Division One of this court stated, "sound judicial practice requires that [WPIC 4.01] be given until a better instruction is approved." 150 Wn. App. 466, 471, 208 P.3d 1201 (2009) (quoting *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007)). In *Castillo*, the trial court had substituted the WPIC for a different instruction. 150 Wn. App. at 469-70. But *Castillo* does not apply because here, the trial court gave the required WPIC 4.01 reasonable doubt standard instruction to the jury. Therefore, Pickering's misplaced reliance on *Castillo* fails to demonstrate how any misconduct could not have been cured by a remedial instruction.

Pickering also contends that because the prosecutor shifted the burden of proof to Pickering, we should apply a constitutional harmless error standard. Even had Pickering preserved this issue for appeal, he does not demonstrate that the prosecutor improperly shifted the burden of proof. Therefore, we need not decide whether a constitutional harmless error standard applies here.

No. 42696-0-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, J.

We concur:

_____
Worswick, C.J.

_____
McCarthy, J.P.T.