FILED
COURT OF APPEALS
DIVISION II

2014 MAR -4 AM 9: 20

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43471-7-II |
| Respondent, | |
| v. | |
| NAINOA KEKAI FONTAINE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Nainoa Kekai Fontaine appeals his jury trial conviction for first degree robbery.[1] He argues that (1) the trial court's "nonstandard" jury instruction, which omitted a sentence required in 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 4.01, at 85 (3d ed. 2008) (WPIC), failed to inform the jurors that he did not have the burden to prove reasonable doubt; and (2) Washington's complicity statute, RCW 9A.08.020, is unconstitutionally overbroad because it criminalizes speech that is protected under the First Amendment. He further argues that he can raise both of these errors for the first time on appeal because they are manifest errors affecting constitutional rights. Fontaine does not establish that the trial court's failure to inform the jurors that he did not have the burden to prove reasonable doubt was a manifest constitutional error; accordingly, we decline to address this issue. And

---

[1] Fontaine does not challenge his first degree rendering criminal assistance conviction.

Fontaine's challenge to the accomplice liability statute fails under *State v. Ferguson*, 164 Wn. App. 370, 264 P.3d 575 (2011), *review denied*, 173 Wn.2d 1035 (2012). Accordingly, we affirm.

## FACTS

### I. BACKGROUND

On January 7, 2012, Fontaine was living with fellow heroin users Donald Francis Gault and Gault's fiancée, Heather Inks. After running out of heroin and starting to experience withdrawal symptoms that morning, Fontaine contacted Jaffeney Gohl by text and asked her to bring some heroin to the house. Gohl agreed to sell Fontaine some heroin and brought Beau Hymas with her to Gault's home; Hymas had planned to purchase a television from Gault for Stephen Santella and was carrying money Santella had given him for the television.

When Gohl and Hymas entered Gault's house, Gault met them in the living room with what appeared to be a gun,[2] pointed the gun at them, and demanded the drugs and money.[3] Fontaine then came out of his bedroom, which was just inside the home's front door, and blocked the exit. According to Gohl, she "hand[ed] over the dope" to Gault or Fontaine and Hymas handed his wallet to Fontaine who left $100 in the wallet and returned it to Hymas. 1 Report of Proceedings (RP) at 53. According to Hymas, Fontaine told them to empty their pockets and to give him the money. Fontaine then took all but $100 out of the wallet and

---

[2] The gun was actually an "air pistol." 2 Report of Proceedings (RP) at 137. But Gohl thought it was a real gun, and Hymas thought it was a real gun until just before leaving the house.

[3] Shortly before Gohl and Hymas arrived, Gault told Inks to go to their bedroom because he did not want her to witness a crime.

returned it to Hymas.[4] Fontaine moved away from the door, and Gohl and Hymas left. Fontaine, Gault, and Inks split the heroin and the money.

Soon after leaving Gault's house, Gohl and Hymas reunited with Santella at a local store and told him about the robbery; he insisted they take him to Gault's house so he could recover his money. When they arrived at Gault's house, Gault came outside and Santella and Hymas fought with him on the porch where Gault stabbed Santella with a knife. Fontaine came out of the house and helped to break up the fight. Hymas and Santella left, Gohl drove them back to the store, and Santella's girlfriend took him to the hospital. Someone called the police, and the police determined that the stabbing had occurred at Gault's house.

When the police arrived at Gault's house to investigate the stabbing, Fontaine came outside to talk to them. He told the officers that he was just visiting, that Gault and Inks were inside the house, and that two men had arrived at the house and had started a fight; he did not mention the drugs or the robbery. The officers told him that he was free to go, but Fontaine did not leave.

After unsuccessfully trying to contact Gault or Inks by telephone, the officers sought a search warrant to allow them to search for Gault and for evidence related to the stabbing. When the officers obtained the search warrant about four hours later, they broke down the door; Gault and Inks were inside.

While interviewing Gault and Inks about the stabbing, the officers learned about the robbery and Fontaine's participation in it. The officers also learned that Fontaine had been texting Gault while the officers were waiting for the search warrant. In these texts, Fontaine told

---

[4] Gohl did not remember who took the money and drugs.

Gault that the officers were seeking a search warrant, suggested that Gault flee via a bedroom window, and told Gault what he (Fontaine) had told the officers about the stabbing.

## II. PROCEDURE

### A. TRIAL TESTIMONY

The State charged Fontaine with first degree robbery[5] and first degree rendering criminal assistance.[6] The case proceeded to a jury trial.[7] The State's witnesses testified as described above. Fontaine was the sole defense witness.

Gault, who testified for the State, testified that he alone planned the robbery and denied having discussed his robbery plan with Fontaine. But he also admitted that he had told Fontaine that he had arranged for Hymas and Gohl to come over with some drugs and that he "made" Fontaine take the money from Hymas and Gohl. Gault further testified that he expected Fontaine to participate in the robbery because Fontaine was living in his house, that Fontaine took both the money and the drugs from Hymas and Gohl, and that he (Gault) shared the money and drugs with Fontaine after the robbery. The State also played a recorded statement Gault had given the police in which Gault told the officer that he (Gault) had discussed the robbery with Fontaine before it happened and that Fontaine participated in the robbery.

Fontaine denied knowing about Gault's robbery plans and, although he admitted that he came out of his room and was standing in his doorway at the time of the robbery, he denied having taken the money or drugs from Gohl or Hymas despite Gault's demanding that he do so.

---

[5] RCW 9A.56.200(1)(a)(ii).

[6] RCW 9A.76.070(1).

[7] Gault pleaded guilty to first degree robbery and second degree assault with a deadly weapon enhancement.

4

Fontaine admitted to having texted Gault and attempting to help Gault escape while the officers were waiting for the search warrant, but he asserted that he did not know at the time that he was committing a felony.

## B. JURY INSTRUCTIONS

The trial court gave the jury the following reasonable doubt/burden instruction, which was based on WPIC 4.01:

> The defendant has entered pleas of not guilty. Those pleas put in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt.
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Paper (CP) at 9-10. This instruction was identical to WPIC 4.01 except it omitted the last sentence of the first paragraph, which reads, "The defendant has no burden of proving that a reasonable doubt exists [as to these elements]."

The trial court also gave the following accomplice liability instruction:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
> (2) aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and

ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

CP at 12-13. No one objected to any of the trial court's jury instructions.

The jury convicted Fontaine of first degree robbery and first degree rendering criminal assistance. Fontaine appeals his first degree robbery conviction.

ANALYSIS

I. BURDEN OF PROOF INSTRUCTION

For the first time on appeal, Fontaine argues that the trial court's burden of proof instruction deprived him of due process because it failed to advise the jury that he had no burden to prove that a reasonable doubt existed. He contends that by omitting the sentence from WPIC 4.01 that stated, "The defendant has no burden of proving that a reasonable doubt exists [as to these elements]," the trial court violated our Supreme Court's directive that the trial courts use WPIC 4.01 and that this omission was a manifest constitutional error. We hold that this error is not manifest.

A. MANIFEST CONSTITUTIONAL ERROR STANDARD

> Generally, an appellate court may refuse to entertain a claim of error not raised before the trial court. RAP 2.5(a). An exception exists for a claim of manifest error affecting a constitutional right. *Id.* In order to benefit from this exception, "*the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'*" *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). *A constitutional error is manifest if the appellant can show actual prejudice, i.e., there must be a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'"* *Id.* at 99, 217 P.3d 756 (alteration in original) (quoting *Kirkman*, 159 Wn.2d at 935, 155 P.3d 125). If an error of constitutional magnitude is manifest, it may nevertheless be harmless. *Id.* The burden of showing an error is harmless remains with the prosecution. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (establishing State's burden to show harmless error beyond a reasonable doubt).

*State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (emphasis added).

## B. WPIC 4.01

In *State v. Bennett*, our Supreme Court directed the trial courts to use only WPIC 4.01 "to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt." 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). WPIC 4.01 describes the State's burden as follows, enclosing in brackets those portions that are used in particular circumstances:

> [The] [Each] defendant has entered a plea of not guilty. That plea puts in issue every element of [the] [each] crime charged. The [State] [City] [County] is the plaintiff and has the burden of proving each element of [the] [each] crime beyond a reasonable doubt. *The defendant has no burden of proving that a reasonable doubt exists [as to these elements].*
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. [If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.]

(Emphasis added.) The trial court's instruction omitted the last sentence of the first paragraph.[8]

The trial court's omission of a portion of WPIC 4.01 is clearly error. *See State v. Castillo*, 150 Wn. App. 466, 473, 208 P.3d 1201 (2009).

## C. NO MANIFEST CONSTITUTIONAL ERROR

Even though the trial court erred in omitting a portion of WPIC 4.01, for purposes of RAP 2.5(a), Fontaine must also show that this error was of constitutional magnitude and that it

---

[8] The instruction the State proposed conformed to WPIC 4.01 and included the sentence the final instruction omitted. The record does not explain why the trial court omitted this sentence in its final instruction.

"'had practical and identifiable consequences in the trial of the case.'" *O'Hara*, 167 Wn.2d at 99 (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). Even presuming, but not deciding, that this error was of constitutional magnitude, Fontaine fails to show that the error had practical and identifiable consequences.[9]

Despite omitting this sentence, the trial court's reasonable doubt instruction correctly and clearly instructed the jury that it was the *State's* burden to prove each element of each crime and that Fontaine was presumed innocent. There was no language in any of the court's instructions suggesting Fontaine had any responsibility to establish reasonable doubt. And throughout his closing argument, defense counsel repeatedly advised the jury that Fontaine did not have any burden of proof. Moreover, Fontaine does not point to, nor can we discern, anything in the trial court's oral instructions to the jury or the State's argument that remotely suggests Fontaine had the burden of presenting any evidence or rebutting the State's evidence.[10] Given the instructions and argument as a whole, we hold that Fontaine does not show that the trial court's omission had any practical or identifiable consequences on this trial. Accordingly, we decline to address this issue further. RAP 2.5(a).

---

[9] We recognize that the *Castillo* court reversed based on a nonstandard reasonable doubt instruction that contained an error similar to the one here. 150 Wn. App. at 473, 475. But *Castillo* is distinguishable because (1) the defendant objected to the improper instruction, and (2) the instruction at issue also contained several additional errors. 150 Wn. App. at 467, 470, 473-75. Additionally, the *Castillo* court never analyzed whether the language omitted here was constitutionally required; it merely determined that the absence of this language did not improve the required language in WPIC 4.01. 150 Wn. App. at 473.

[10] In fact, defense counsel's argument suggests that at the start of the case, the trial court advised the jury that Fontaine had no burden. Unfortunately, this part of the record was not transcribed.

II. ACCOMPLICE LIABILITY

Fontaine next argues that Washington's complicity statute, RCW 9A.08.020, is unconstitutionally overbroad because it criminalizes speech that is protected under the First Amendment.[11] He asks us to overrule our decision rejecting this identical argument in *Ferguson* and to reject the analysis in Division One of this court's decision in *State v. Coleman*, 155 Wn. App. 951, 231 P.3d 212 (2010), *review denied*, 170 Wn.2d 1016 (2011). Even assuming, but not deciding, that Fontaine can raise this argument for the first time on appeal, this argument fails.

Under RCW 9A.08.020(3)(a), a person is guilty as an accomplice if "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she . . . (ii) [a]ids or agrees to aid such other person in planning or committing it." Fontaine argues that by including assistance given by words or encouragement, the definition of "aid" in the Washington accomplice liability pattern jury instruction criminalizes a vast amount of speech that the First Amendment protects.[12]

> A statute is unconstitutionally overbroad if it prohibits a substantial amount of protected speech and conduct. *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989). A statute that regulates behavior, not pure speech, will not be overturned "unless the overbreadth is 'both real and substantial in relation to the [statute's] plainly legitimate sweep.'" *City of Seattle v. Eze*, 111 Wn.2d 22, 31, 759 P.2d 366 (1988) (quoting *O'Day v. King County*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988)). The constitutional guarantee of free speech does not allow a State to forbid the advocacy of a law violation "except where such advocacy is

---

[11] The First Amendment provides in part that "[c]ongress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment applies to the states through the Fourteenth Amendment. *Kistap County v. Mattress Outlet*, 153 Wn.2d 506, 511, 104 P.3d 1280 (2005).

[12] The Washington Pattern Jury Instruction provided to the jury here defines "aid" as follows:
> The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

CP at 13; *see also* 11 WPIC 10.51, at 217 (3d ed. 2008).

directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969).

*Ferguson*, 164 Wn. App. at 375. In *Coleman*, Division One of this court held that the accomplice liability statute was not unconstitutionally overbroad because it "requires the criminal mens rea to aid or agree to aid the commission of a specific crime with knowledge the aid will further the crime," thus showing that the speech at issue was intended to and was likely to produce or incite imminent lawless action. 155 Wn. App. at 960-61. We adopted this reasoning in *Ferguson*. 164 Wn. App. at 376.

Fontaine acknowledges *Ferguson* and *Coleman*, but he argues that the courts decided these cases incorrectly (and, therefore, we should reconsider these cases) because the courts' reliance on the mens rea requirement does not meet the federal *Brandenburg* standard. But in *Ferguson*, we addressed the *Brandenburg* standard and concluded that "[b]ecause the [accomplice liability] statute's language forbids advocacy directed at and likely to incite or produce imminent lawless action, it does not forbid the mere advocacy of law violation that is protected under the holding of *Brandenburg*." 164 Wn. App. at 376. We once again reject this constitutional challenge. *See also State v. McCreven*, 170 Wn. App. 444, 484-85, 284 P.3d 793 (2012) (rejecting the same argument and following *Ferguson*), *review denied*, 176 Wn.2d 1015 (2013).

No. 43471-7-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J.

We concur:

BJØRGEN, J.

MAXA, J.

11