# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 75240-5-I |
| Respondent, | |
| v. | DIVISION ONE |
| DANIEL RAE TERRY, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 25, 2016 |

LEACH, J. — Daniel Terry appeals his conviction and sentence for violating a court order that prohibited him from contact with Charlotte Allen. He challenges the completeness of the trial court's "to convict" jury instruction, the admission of evidence obtained from his seizure, and use of two out-of-state convictions to calculate his offender score. Because the jury instructions adequately informed the jury of the elements of the crime, admission of the challenged evidence was harmless beyond a reasonable doubt, and Terry affirmatively acknowledged that his prior convictions existed and were comparable to Washington felonies, we affirm. We decline to consider Terry's request to waive appellate costs.

## Background

Terry was panhandling outside a Burger King in Olympia when an employee's husband, Darren Sylvester, called the police. Sylvester had observed Terry and a woman talking to each other and walking back and forth to

the nearby liquor store. He thought they were acting suspiciously and possibly exchanging drugs.

Officer Noel responded. When he pulled into the parking lot, he "observed a female walking away from the bus stop area talking and gesturing back to a gentleman that was standing at the bus stop." He spoke to Sylvester, who identified them as the people he had reported.

Officer Leavitt arrived, and Noel requested that he contact the woman. Noel then went to speak to the man at the bus stop. As Noel spoke to the man, whom he had not yet identified as Terry, he heard Leavitt run the woman's name, Charlotte Allen, through police dispatch for "wants and warrants." He heard the dispatcher respond that Allen was the protected party in a no-contact order naming Daniel Terry as the respondent. Dispatch did not give a physical description of Terry.[1] After Noel received this information and as he attempted to identify Terry, a bus arrived at the stop. Noel said to Terry, "[H]ey, can you wait and let me finish talking to you?"[2] Terry let the bus go. After he gave Noel the last four digits of his social security number, Noel confirmed him as the respondent in the no-contact order. Noel then detained Terry for violating that order.

---

[1] The trial court's oral finding to the contrary was thus unsupported.
[2] Noel testified that Terry was "not free to leave" when the bus arrived.

The trial court denied Terry's motion to suppress based on an unlawful seizure. It found that Noel had a reasonable, articulable suspicion that Terry had violated a no-contact order before Noel asked Terry not to board the bus.

A jury convicted Terry of violating the no-contact order. Terry stipulated to an offender score of nine, which included two out-of-state convictions. The trial court sentenced him to 60 months of confinement based on that score.

Analysis

Jury Instructions

The trial court's elements instruction told the jury, in part, that to convict Terry it had to find beyond a reasonable doubt that "(1) . . . there existed a no contact order applicable to the defendant; (2) . . . the defendant knew of the existence of this order; [and] (3) . . . the defendant knowingly violated a provision of this order." The trial court rejected Terry's proposed instruction, which would have changed "knowingly" to "willfully" in section (3). The trial court's instruction followed the Washington pattern jury instructions for violation of a court order.[3]

We review a challenged jury instruction de novo, examining it in the context of the instructions as a whole.[4] Jury instructions must inform the jury that the State bears the burden of proving every essential element of the offense beyond a reasonable doubt.[5] A court commits reversible error if its instructions

---

[3] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.50, at 632 (3d ed. 2008).
[4] State v. Castillo, 150 Wn. App. 466, 469, 208 P.3d 1201 (2009).
[5] State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

relieve the State of this burden.[6] Instructions must also properly inform the jury about the applicable law and must not mislead the jury.[7]

RCW 10.99.050(2)(a) prohibits "[w]illful violation of a court order."[8] A willfulness requirement "is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears."[9]

In State v. Clowes,[10] Division Two of this court held that the trial court did not err in substituting "knowingly" for "willfully" in an instruction stating for the jury the facts it needed to find to convict a defendant for violating a no-contact order. It reasoned that because "proof that a person acted 'knowingly' is proof that they acted 'willfully'" and another instruction defined "knowingly" for the jury, the trial court did not err in using "knowingly." But Division Two held that the trial court's to-convict instruction was incomplete. The instruction "contain[ed] a single statement as to the elements[:] 'the defendant knowingly violated the provisions of a no contact order[.]'"[11] Division Two concluded that this statement failed to

---

[6] State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

[7] Bennett, 161 Wn.2d at 307.

[8] The State charged Terry under RCW 26.50.110(5), RCW 10.99.020, and RCW 10.99.050. RCW 10.99.020(5)(r) defines "domestic violence" to include "[v]iolation of the provisions of a . . . no-contact order." RCW 26.50.110(5) provides, "A violation of a court order issued under . . . chapter . . . 10.99 . . . is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under [various chapters]."

[9] RCW 9A.08.010(4); see State v. Clowes, 104 Wn. App. 935, 944, 18 P.3d 596 (2001).

[10] 104 Wn. App. 935, 944, 18 P.3d 596 (2001).

[11] Clowes, 104 Wn. App. at 944 (second alteration in original).

"tell the jury that not only must the defendant know of the no-contact order; he must also have intended the contact."[12]

Terry contends that, as in Clowes, the trial court's to-convict instruction allowed the jury to "convict based upon evidence that a defendant who knew of a no-contact order accidentally or inadvertently contacted the victim."[13] We disagree.

The trial court instructed the jury that it needed to find that a no-contact order existed, that Terry knew of it, and that Terry "knowingly violated" it. Unlike the instruction in Clowes, this instruction contained all the essential elements of the offense.[14] This instruction did not allow the jury to find Terry guilty if he contacted Allen briefly and accidentally because the instruction required the jury to find that he violated the order—i.e., contacted Allen—"knowingly." "[P]roof that a person acted 'knowingly' is proof that [the person] acted 'willfully.'"[15] Therefore, the instruction required the jury to find that Terry "willfully" contacted Allen.[16]

"[C]larifying definitions of elements may be contained in separate instructions."[17] Here, the trial court's additional instructions defined acting

---

[12] Clowes, 104 Wn. App. at 944-45.
[13] Clowes, 104 Wn. App. at 945.
[14] RCW 10.99.050.
[15] Clowes, 104 Wn. App. at 944.
[16] As here, the instruction in Clowes required the jury to find that the defendant "knowingly violated" the no-contact order. But Division Two was troubled because the instruction did not require the jury to find both that the defendant knew the order existed and that the defendant knew he was contacting the protected party. Clowes, 104 Wn. App. at 945. The instruction here expressly applies the "knowingly" requirement to both those elements.
[17] Clowes, 104 Wn. App. at 944.

"knowingly," informed the jury that it is "a defense to the charge of violation of a court order that the contact was not willful," and explained that "[a] person does not act willfully if that person does not knowingly and intentionally maintain contact that started accidentally or by happenstance." When read as a whole, the trial court's instructions did not relieve the State of its burden to prove that Terry willfully violated a no-contact order.[18]

Unlawful Seizure

Next, Terry contends that the trial court erred in admitting evidence the State obtained by unlawfully seizing him.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures.[19] As a general rule, warrantless searches and seizures are per se unreasonable, and the State bears the burden of demonstrating the applicability of a recognized exception to the rule.[20] The exclusionary rule provides the remedy for an unlawful seizure.[21] It requires that the trial court suppress evidence the State obtained as a result of such a seizure.[22]

We avoid deciding constitutional issues when we can decide a case on nonconstitutional grounds.[23]

---

[18] See Castillo, 150 Wn. App. at 469.
[19] State v. Day, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007).
[20] Day, 161 Wn.2d at 893-94.
[21] State v. Winterstein, 167 Wn.2d 620, 632, 220 P.3d 1226 (2009).
[22] Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); Winterstein, 167 Wn.2d at 632.
[23] State v. Speaks, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992).

Terry contends that Officer Noel seized him without reasonable suspicion when Noel prevented him from boarding a bus. We assume, without deciding the issue, that Noel seized Terry without a reasonable suspicion to do so. The remedy for this constitutional violation is exclusion of any evidence seized as a result of the violation.[24] But Terry does not identify what evidence the State obtained as a result of his seizure.

From our review of the record, it appears that the only evidence obtained through the seizure admitted at trial is Noel's testimony identifying Terry as being present at the scene. To the extent Terry contests the trial court's admission of this evidence, this was harmless beyond a reasonable doubt. Sylvester testified that he saw Terry interacting with Allen and pointed him out to Officer Noel as the person he had called about. And Terry himself testified that he was present, interacted with Allen, and spoke to Noel. Because admission of the challenged evidence was harmless beyond a reasonable doubt, we do not need to decide the validity of Noel's seizure.

Offender Score

Terry also challenges the trial court's calculation of his offender score.

A defendant may challenge an erroneous sentence for the first time on appeal.[25] We review a trial court's calculation of an offender score de novo.[26]

---

[24] Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); State v. Abuan, 161 Wn. App. 135, 147, 257 P.3d 1 (2011).
[25] State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).
[26] State v. Johnson, 180 Wn. App. 92, 100, 320 P.3d 197, review denied, 181 Wn.2d 1003 (2014).

A sentencing court must classify a prior out-of-state conviction "according to the comparable offense definitions and sentences provided by Washington law."[27] When the State seeks to include out-of-state convictions in a defendant's offender-score calculation, it must prove by a preponderance of the evidence that they are comparable to Washington convictions.[28] In reviewing this classification, this court conducts an analysis to determine whether the foreign offenses are comparable to Washington offenses.[29]

But this analysis is not required, however, when the defendant affirmatively acknowledges the existence and comparability of out-of-state convictions.[30] This stipulation relieves the State of its burden of proving the existence and comparability of the out-of-state convictions and satisfies the requirements of the Sentencing Reform Act of 1981, chapter 9.94A RCW, and due process.[31]

Here, the State concedes that Terry may challenge his offender score for the first time on appeal. Terry contends that the trial court improperly included two out-of-state convictions in his offender score because they were for crimes that are not "comparable" to Washington felonies. We disagree.

Terry stipulated that his criminal history and scoring were correct, including the Oregon and Florida convictions. This affirmative acknowledgment

---

[27] RCW 9.94A.525(3).
[28] State v. Jones, 182 Wn.2d 1, 9, 338 P.3d 278 (2014).
[29] State v. Thiefault, 160 Wn.2d 409, 414-15, 158 P.3d 580 (2007).
[30] State v. Ross, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004).
[31] Ross, 152 Wn.2d at 230, 233; Ford, 137 Wn.2d at 483 & n.5.

relieved the State from producing evidence to prove Terry's criminal history and precludes Terry's challenge to the offender-score calculation.[32]

<u>Appellate Costs</u>

Finally, Terry asks that this court use its discretion to deny any appellate costs the State may request as prevailing party. The trial court found Terry indigent.

"The commissioner or clerk 'will' award costs to the State if the State is the substantially prevailing party on review, '<u>unless the appellate court directs otherwise in its decision terminating review</u>.'"[33] This court has discretion to consider the issue of appellate costs when a party raises the issue in its brief.[34]

In <u>State v. Sinclair</u>,[35] this court used its discretion to deny appellate costs to the State when the defendant remained indigent and this court saw "no realistic possibility," given that the defendant was 66 years old and received a 280-month prison sentence, that he would be able to pay appellate costs.

Here, we decline to decide the issue of appellate costs now. Terry's age and length of sentence distinguish him from Sinclair. We note also that if the commissioner or clerk of court does approve a cost bill from the State, RCW

---

[32] <u>See</u> <u>Ross</u>, 152 Wn.2d at 233.

[33] <u>State v. Sinclair</u>, 192 Wn. App. 380, 385-86, 367 P.3d 612 (2016) (quoting RAP 14.2), <u>review denied</u>, No. 92796-1 (Wash. June 29, 2016).

[34] <u>Sinclair</u>, 192 Wn. App. at 388-90, 393.

[35] 192 Wn. App. 380, 393, 367 P.3d 612 (2016), <u>review denied</u>, No. 92796-1 (Wash. June 29, 2016).

10.73.160(4) allows the sentencing court to remit costs if payment would "impose manifest hardship" on Terry or his family.[36]

Conclusion

We affirm the conviction and sentence.

_Leach, J._

WE CONCUR:

_Spearman, J._                    _Dwyer, J._

---

[36] State v. Nolan, 98 Wn. App. 75, 79, 988 P.2d 473 (1999), aff'd, 141 Wn.2d 620, 8 P.3d 300 (2000).