IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON, )
) No. 72102-0-I
Respondent, )
) ORDER GRANTING MOTION
v. ) FOR RECONSIDERATION,
) WITHDRAWING OPINION, AND
ALAN JAMES SINCLAIR, II, ) SUBTITUTING PUBLISHED
) OPINION
)
Appellant. )
_____)

Appellant, Alan Sinclair II, has moved for reconsideration of this court's

opinion filed on December 7, 2015. Respondent, State of Washington, has filed

an answer to appellant's motion for reconsideration.

The court has determined that appellant's motion for reconsideration

should be granted, the opinion filed on December 7, 2015, should be withdrawn,

and a published substitute opinion should be filed. Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration is granted, the

opinion filed on December 7, 2015, is withdrawn, and a published substitute

opinion is filed and shall be printed in the Washington Appellate Reports.

DATED this 27th day of January 2016.

Becker, J.

Leach, J.

Dwyer, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72102-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ALAN JAMES SINCLAIR, II, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 27, 2016 |

BECKER, J. — Appellant, convicted of sexually abusing his granddaughter, contends the trial court improperly admitted a recording of an incriminating communication obtained without the consent of the participants in the communication. The recording resulted from an inadvertent "pocket dial" from appellant's cell phone to the recipient's voice mail. Finding that any statutory violation was harmless, we affirm.

A jury found appellant Alan Sinclair guilty of two counts of second degree rape of a child, two counts of third degree child molestation, and one misdemeanor count of communication with a minor for immoral purposes. All charges arose from Sinclair's sexual abuse of his granddaughter. According to her testimony at trial, Sinclair began kissing her "tongue to tongue" when she was 11 or 12 years old and progressed to oral sex when she was 13 or 14.

The recording at issue occurred one afternoon when the granddaughter was home alone and Sinclair was visiting her. The granddaughter testified that

Sinclair kissed her "tongue to tongue" and then she and Sinclair went outside and continued a conversation. During the conversation, Sinclair unintentionally dialed the girl's mother with his cell phone. The mother did not answer. Her cell phone transferred the call to voice mail. The voice mail system recorded Sinclair saying, "I love that tongue. . . . I don't know if you love mine." The conversation continued with Sinclair making veiled threats that his dead ancestors would inflict physical injury on the girl for not being "nice." The mother later listened to the voice mail recording on her phone and heard the conversation. This led to the filing of the criminal charges against Sinclair.

Sinclair moved to suppress the voice mail under the Washington privacy act, chapter 9.73 RCW. The privacy act makes it unlawful for any "individual" to record any private conversation "without first obtaining the consent of all the persons engaged in the conversation." RCW 9.73.030(1)(b). There is an exception for conversations "which convey threats," which "may be recorded with the consent of one party to the conversation." RCW 9.73.030(2). Neither Sinclair nor his granddaughter consented to the recording.

Sinclair contends the lack of consent made the recording inadmissible at trial. The trial court considered a number of issues in connection with Sinclair's motion to suppress. Was the conversation private? Did an "individual" record it? Does an individual incur criminal liability for an inadvertent recording, or must someone be acting with a criminal mens rea to engage the prohibitions of the act? It was undisputed that the call was made inadvertently. The trial court

2

denied the motion to suppress, concluding the privacy act did not apply because of "the absence of any unlawful act by anybody."

The issues are interesting and novel. But we conclude it is unnecessary to resolve them in this case because any error was harmless. We refrain from attempting a "definitive construction" of the statute in a case involving somewhat "bizarre" facts. State v. Smith, 85 Wn.2d 840, 846, 540 P.2d 424 (1975).

Admission of evidence in violation of the privacy act is a statutory violation, not a constitutional one. An error is not prejudicial unless the erroneous admission of the evidence materially affected the outcome of the trial. State v. Courtney, 137 Wn. App. 376, 383-84, 153 P.3d 238 (2007), review denied, 163 Wn.2d 1010 (2008). Here, there is no reasonable probability that the outcome of Sinclair's trial would have been different if the recording of the pocket-dialed voice mail had been excluded.

The granddaughter's testimony at trial provided independent, unchallenged evidence of the contents of the inadvertently recorded conversation. Her account was corroborated by sexually explicit photographs and a video seized from Sinclair's cell phone and computer. During his closing, Sinclair admitted guilt as to the charges of child molestation in the third degree and communicating with a minor for immoral purposes. The only charges Sinclair disputed were the two counts of second degree child rape. He argued that the State presented insufficient evidence to prove that he engaged in sexual intercourse with the girl before her 14th birthday. He does not make this argument on appeal.

3

It is unlikely that the jury's verdict of guilt on the two disputed counts was affected by the admission of the recorded conversation. There was no allusion in that conversation either to sexual intercourse or to the age of the granddaughter. Assuming the recording to be inadmissible, we conclude Sinclair has not shown that the error materially affected the outcome at trial.

We now address Sinclair's motion for reconsideration regarding the issue of appellate costs. He asks this court to exercise discretion to amend the decision terminating review by determining that an award of appellate costs to the State is not warranted.

Neither the State nor Sinclair raised the issue of costs in their appellate briefs. Generally, to timely raise an issue for review, a party must present argument in the appellate briefs, with citation to supportive authority and information in the record. Nevertheless, we will consider Sinclair's motion for reconsideration because the issue of appellate costs is systemic in nature, it needs to be addressed, and both parties' positions are well briefed.

Under RCW 10.73.160(1), appellate courts "*may* require an adult offender convicted of an offense to pay appellate costs." (Emphasis added.) The statute provides that appellate costs "shall be requested in accordance with the procedures contained in Title 14 of the rules of appellate procedure." RCW 10.73.160(3). Under the Rules of Appellate Procedure, the State may simply present a cost bill as provided in RAP 14.4. State v. Blank, 131 Wn.2d 230, 251, 930 P.2d 1213 (1997). The State is not obliged to request an award of costs in

4

its appellate briefs, although it does not appear there is any rule preventing the State from doing so. See Blank, 131 Wn.2d at 251.

The commissioner or clerk "will" award costs to the State if the State is the substantially prevailing party on review, "*unless the appellate court directs otherwise in its decision terminating review.*" RAP 14.2 (emphasis added).[1] Consequently, it appears that a clerk or commissioner has no discretion under the rules to deny an award of costs when the State has substantially prevailed on review. See State v. Nolan, 141 Wn.2d 620, 626, 8 P.3d 300 (2000). The appellate court, however, may "direct otherwise in its decision." Nolan, 141 Wn.2d at 626.

An award of appellate costs becomes part of the judgment and sentence. RCW 10.73.160(3). A defendant may petition the sentencing court at any time for the remission of costs if the amount due "will impose manifest hardship on the defendant or the defendant's immediate family." RCW 10.73.160(4).

We filed our opinion affirming Sinclair's conviction on December 7, 2015. On December 9, 2015, the State filed a cost bill requesting an award of $6,983.19 in appellate costs. Of this amount, $6,923.21 would be paid to the Washington Office of Pubic Defense for recoupment of the cost of court appointed counsel ($2,917), preparation of the report of proceedings ($3,907), copies of clerk's papers ($90), and appellate court copying charges ($9.21). The remainder, $59.98, would be paid to the King County Prosecutor's Office.

---

[1] The definition of "a decision terminating review" is found in RAP 12.3(a).

On December 21, 2015, Sinclair filed both an objection to the cost bill and a motion for reconsideration of the opinion. Sinclair's objection to the cost bill characterized Division One's current system of handling appellate costs as "a blanket refusal to exercise discretion after a cost bill is filed" (Objection to Cost Bill, at 10). Sinclair cited the policy concerns identified in State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015). He argued that notwithstanding Nolan, commissioners should exercise discretion to deny a cost bill even if the court has not so directed in the decision terminating review. Alternatively, he requested that we direct the trial court to hold a hearing regarding his ability to pay. A ruling on Sinclair's objection to the cost bill was deferred pending resolution of the motion for reconsideration.

In his motion for reconsideration, Sinclair again asserts that Division One's commissioners routinely decline to exercise discretion to deny costs and that the court routinely denies motions to modify. It is unclear, he says, what must happen for this court to exercise discretion. "Must a party raise anticipatory cost objections in his or her opening brief based on the assumption the party's substantive arguments will fail? Or will elected judges exercise appropriate discretion following an indigent party's motion to modify a commissioner's ruling awarding costs?" Motion for Reconsideration at 2. "To the extent that a challenge to appellate costs must be raised in the briefs so that the court can exercise discretion in the decision terminating review, Sinclair asks this court to reconsider and amend its decision terminating review so that it can exercise this discretion." Motion for Reconsideration at 3.

On January 15, 2016, at the court's request, the State answered the motion. The State takes the position that the appellate court should not consider a cost award until after the decision terminating review is filed. The State acknowledges that an appellate court's failure to exercise discretion in the decision terminating review, coupled with the commissioner's lack of discretion under RAP 14.2, generally results in the award of costs to the State as the prevailing party. In the State's view, this is because a motion to modify a nondiscretionary commissioner's ruling awarding costs "is likely to fail, unless the commissioner has overlooked a flaw in the cost bill, or unless the objecting party has correctly identified some discrepancy between the cost bill and the information available to counsel." Answer to Motion for Reconsideration at 10.

The State maintains that a virtually automatic award of appellate costs upon request by the State is preferable to this court's exercise of discretion in the decision terminating review. The State claims there is not enough information available to this court to facilitate an exercise of discretion. Without specifically mentioning Blazina, the State argues that a future trial court remission hearing under RCW 10.73.160(4) is the solution to the problem of indigent offenders who upon release from confinement face a substantial and compounded repayment obligation in addition to the difficulties of finding housing and employment. The State points out that in Blank, 131 Wn.2d at 246, the court rejected a due process challenge to RCW 10.73.160 in part because an offender always has the right to seek remission from an award of costs.

The problem with the State's argument is that it requires this court to refrain from exercising the discretion that we indisputably possess under RCW 10.73.160 and Nolan. Contrary to the State's suggestion, our Supreme Court has rejected the proposition that the broad discretion to grant or deny appellate costs under RCW 10.73.160(1) should be exercised only in "compelling circumstances." See Nolan, 141 Wn.2d at 628.

The future availability of a remission hearing in a trial court cannot displace this court's obligation to exercise discretion when properly requested to do so. The statute vests the appellate court with discretion to deny or approve a request for an award of costs. Under RAP 14.2, that discretion may be exercised in a decision terminating review.

In his objection to the cost bill, Sinclair proposed as an alternative that we remand the cost bill to the trial court to conduct an inquiry into his current and future ability to pay $6,983.19 in appellate costs. As a model for that alternative, Sinclair submitted a cost bill ruling from Division Two. The Division Two commissioner ruled that the State, as prevailing party, was entitled to its costs, but also ruled that an award of appellate costs is a discretionary legal financial obligation that can be imposed only as provided in Blazina. The commissioner ruled that under Blazina, the costs would be imposed only upon the trial court making an individualized finding that the defendant had "the current or likely future ability to pay his appellate costs." Sinclair's Objection to Cost Bill, Appendix C.

The problem with Sinclair's suggested remedy of a remand to the trial court is twofold. Not only would it delegate the issue of appellate costs away from the court that is assigned to exercise discretion, it would also potentially be expensive and time-consuming for courts and parties. We disagree with the Division Two commissioner's statement that an award of appellate costs is a discretionary legal financial obligation controlled by Blazina's decision to "remand the cases to the trial courts for new sentence hearings." Blazina, 182 Wn.2d at 839. The statute considered in Blazina, RCW 10.01.160, does not govern appellate costs. For costs that "may" be imposed upon a convicted defendant at the trial court level, it specifically sets forth parameters and limitations, prominently including the defendant's ability to pay and financial resources. RCW 10.01.160(3).

Our statute, RCW 10.73.160, does not set forth parameters for the exercise of discretion. Ability to pay is certainly an important factor that may be considered under RCW 10.73.160, but it is not necessarily the only relevant factor, nor is it necessarily an indispensable factor. Factors that may be relevant to an exercise of discretion by an appellate court under RCW 10.73.160 can be set forth and factually supported at least as efficiently in appellate briefs as in a trial court hearing.

To summarize, we are not persuaded that we should refrain from exercising our discretion on appellate costs. Nor are we attracted to the idea of delegating our discretion to a trial court. We conclude that it is appropriate for

9

this court to consider the issue of appellate costs in a criminal case during the course of appellate review when the issue is raised in an appellant's brief.[2]

We recognize that this approach is not without some practical inefficiencies. The State historically does not ask for an award of costs in every case. Appellate defense counsel may decide it is necessary to include a preemptive argument against costs in every case, only to find that the State does not intend to request costs. And as Sinclair points out, raising the potential issue of appellate costs in the brief of appellant puts appellate defense counsel in the position of assuming the client may not prevail on substantive claims.

A rule change requiring the State to include a request for costs in the brief of respondent would eliminate these problems, but even under the current system, it is feasible for the parties and the court to address costs in the course of appellate review. In the somewhat analogous situation created by RAP 18.1(b), a party who wishes to recover attorney fees under applicable law must "devote a section of its opening brief" to the request for fees or expenses.[3] Typically, a short paragraph or even a sentence is deemed compliant with the rule. Sinclair's motion for reconsideration devotes only half a page to outlining the reasons why this court should exercise its discretion not to impose costs, and

_____

[2] Sinclair's motion for reconsideration does not ask us to decide, and we do not decide, whether the appellate court has discretion to deny or substantially reduce an award of costs when asked to do so by a motion to modify a commissioner's award of costs under RAP 14.2.

[3] We say "somewhat" analogous because the costs the State is entitled to request are awardable under RAP Title 14, not under RAP 18.1. Under RAP Title 14, the State is not required to request costs in its appellate brief. Blank, 131 Wn.2d at 251. The State may simply present a cost bill as provided in RAP 14.4.

the State's response is similarly brief, so we are not concerned that this approach will lead to overlength briefs. We also point out that where the State knows at the time of receiving the notice of appeal that no cost bill will be filed, a letter so advising defense counsel would be courteous.

The State has the opportunity in the brief of respondent to make counterarguments to preserve the opportunity to submit a cost bill. The State complains that it lacks access to pertinent information at the stage of appellate briefing. This is not a persuasive assertion. The State merely needs to articulate the factors that influenced its own discretionary decision to request costs in the first place. Both parties should be well aware during the course of appellate review of circumstances relevant to an award of appellate costs. A great deal of information about any offender is typically revealed and documented during the trial and sentencing, including the defendant's age, family, education, employment history, criminal history, and the length of the current sentence. To the extent current ability to pay is deemed an important factor, appellate records in the future may also include trial court findings under Blazina. And the foregoing list of factors is not intended as an exhaustive or mandatory itemization of information that may support a decision one way or another.

As a general matter, the imposition of costs against indigent defendants raises problems that are well documented in Blazina—e.g., "increased difficulty in reentering society, the doubtful recoupment of money by the government, and inequities in administration." Blazina, 182 Wn.2d at 835. It is entirely appropriate for an appellate court to be mindful of these concerns. Carrying an obligation to

pay a bill of $6,983.19 plus accumulated interest can be quite a millstone around the neck of an indigent offender. Still, exercising discretion means making an individualized inquiry. See Blazina, 182 Wn.2d at 838 ("the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry.") To decide that appellate costs should never be imposed as a matter of policy no more comports with a responsible exercise of discretion than to decide that they should always be imposed as a matter of policy.

When this court reviews a trial court's ruling on attorney fees in a civil case, we generally require the trial court to explain its reasoning based on the specific facts of the case, or the award will be remanded "to ensure that discretion is exercised on articulable grounds." Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998). Similarly, when this court decides the issue of appellate costs, it behooves us to explain the basis for the ruling. Both parties can be helpful to the appellate court's exercise of its discretion by developing fact-specific arguments from information that is available in the existing record.

In the present case, both parties focus on the factor of ability to pay. Sinclair makes the following argument:

> There are several reasons this court should exercise its discretion not to impose costs. Sinclair is currently 66 years old. CP 6. He was sentenced to a minimum term of incarceration of 280 months in June 2014. CP 142, 146. His sentence is indeterminate. CP 146. The trial court made no determination that Sinclair was able to pay any amount in trial court LFOs [legal financial obligations] and in fact waived all nonmandatory LFOs in the judgment and sentence. CP 144. The trial court appointed

12

> appellate counsel because Sinclair was "unable by reason of poverty to pay for any of the expenses of appellate review." See Appendix C (Indigency Order). Under the circumstances, there is no reason to believe Sinclair is or ever will be able to pay $6,983.19 in appellate costs (let alone any interest that compounds at an annual rate of 12 percent). This court should accordingly exercise discretion and deny appellate costs in the decision terminating review.

Motion for Reconsideration at 3. Attached to the motion for reconsideration is the trial court order authorizing Sinclair to appeal in forma pauperis and to have appointment of appellate counsel and preparation of the record at State expense. The order states that Sinclair "is unable by reason of poverty to pay for any of the expenses of appellate review" and "the defendant cannot contribute anything toward the costs of appellate review."

The State counters with a citation to the record at sentencing, where Sinclair's attorney stated that Sinclair was retired after 20 years of employment with a substantial local manufacturing company. Thus, the State argues it is "likely" that Sinclair is eligible for retirement income. The State also points out that the indigency order was submitted and signed ex parte, so that there is no independent check on the accuracy of the information on which the order was based.

The procedure for obtaining an order of indigency is set forth in RAP Title 15, and the determination is entrusted to the trial court judge, whose finding of indigency we will respect unless we are shown good cause not to do so. Here, the trial court made findings that support the order of indigency. Important to our determination, the Rules of Appellate Procedure establish a presumption of continued indigency throughout review:

13

> A party and counsel for the party who has been granted an order of indigency must bring to the attention of the trial court any significant improvement during review in the financial condition of the party. The appellate court will give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent.

RAP 15.2(f).

We have before us no trial court order finding that Sinclair's financial condition has improved or is likely to improve. No evidence supports the State's speculation that Sinclair has undisclosed retirement benefits. We therefore presume Sinclair remains indigent. Sinclair is a 66-year-old man serving a minimum term of more than 20 years. There is no realistic possibility that he will be released from prison in a position to find gainful employment that will allow him to pay appellate costs. Under these circumstances, we exercise our discretion to rule that an award to the State of appellate costs is not appropriate.

The motion for reconsideration is granted. The conviction is affirmed. Appellate costs will not be awarded. The pending cost bill and objection are stricken.

Becker, J.

WE CONCUR:

Leach, J.

Dwyer, J.

14