IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | |
| | ) | |
| | ) | No. 34073-2-III |
| Respondent, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOILENE TANYA MAXWELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

KORSMO, J. — Joilene Tanya Maxwell appeals her Benton County bench trial

conviction for failure to register as a sex offender. She contends her counsel was

ineffective for waiving a CrR 3.5 hearing and failing to move to suppress statements she

made to a sheriff's office employee. We affirm.

FACTS AND PROCEDURAL HISTORY

Joilene Maxwell has a 1989 first degree child molestation conviction that requires

her to register as a sex offender. She has two prior convictions from 1998 and 2011 for

failure to register as a sex offender. On February 20, 2015, she registered with the

Benton County Sheriff's Office as a transient sex offender. As part of the registration,

she is required to turn in weekly transient check-in sheets. In October 2015, the State

charged her with failure to register as a sex offender for allegedly failing to turn in her weekly check-in sheets during the time intervening between September 9, 2015 and October 6, 2015. She waived her right to a jury trial.

At the outset of the bench trial, Ms. Maxwell's counsel brought up as a preliminary matter:

> There was a statement made to a sheriff's deputy when [Ms. Maxwell] was served with a 72-hour hold document, and there was a statement that was made that was not responsive to any questioning at all, so it's not a custodial statement in response to interrogation, so there is not a 3.5 issue, Your Honor.

Report of Proceedings (Dec. 14, 2015) (RP) at 5-6. The deputy prosecutor concurred. The court thus did not hold a CrR 3.5 hearing.

Dianne McCants is the sex offender registration clerk for Benton County and the primary point of contact for anyone who has a sex offender registration requirement. Sheriff's Detective Dave Wilson is assigned to monitoring sex offenders in the county. Both testified at trial that the procedure for transient offenders is to turn in a weekly check-in sheet every Wednesday to a locked drop box in front of the sheriff's office. They are the only individuals with access to the key to the drop box, which has a slot approximately the length of a ballpoint pen and not wide enough for anyone to stick a finger into. One of them checks the box either Thursday, Friday, or the following Monday and brings the check-in sheets immediately back to the office and enters them as verified into the State's Offender Watch database.

2

Ms. McCants testified that she explained the reporting requirements to Ms. Maxwell when she registered on February 20, 2015, and that Ms. Maxwell did not have any questions. She properly turned in her check-in sheet each week from February 20 through September 2, 2015. But according to Ms. McCants and Detective Wilson, she failed to turn in her check-in sheet for four straight weeks—on September 9, September 16, September 23, and September 30. She was taken into custody on another matter on October 6, 2015.

Later in October, Ms. McCants learned that Ms. Maxwell was about to be released from jail. At Ms. McCants' request, the prosecutor approved a 72-hour hold for pending charges of failing to register. Ms. McCants then went to the jail and spoke with Ms. Maxwell. Ms. McCants testified as follows about their conversation:

> [The State:] Okay. And what did . . . she tell you? Did you ask her about check-in?
> [Ms. McCants:] I did.
> [The State:] And what was her response?
> [Ms. McCants:] I did. We had a conversation about that and I let her know that there was a . . . 72-hour hold for charges for failing to register. And I asked . . . "why didn't you check in? You know, you forgot to drop off your check-in sheets. We didn't get them." And at that time she said, "Well, I was using—I was using, so maybe I forgot."
> [The State:] Okay. Did she ever tell you that she had brought them in and you must have lost them?
> [Ms. McCants:] No.

RP at 22. Ms. Maxwell's counsel did not object during this testimony and no one broached the subject of a CrR 3.5 hearing.

3

Defense counsel's cross-examination of Ms. McCants focused on the reporting procedures and inquiry whether the sheriff's office could have lost or misplaced Ms. Maxwell's check-in sheets. Ms. McCants testified there are approximately 18 transient sex offenders registered with the Benton County Sheriff's Office. To her knowledge, a weekly check-in sheet has never been lost in the approximately three years the box has been used. Detective Wilson likewise testified that to his knowledge he has never lost a check-in sheet from a transient offender.

Ms. Maxwell testified on her own behalf. She said she dropped off her weekly check-in sheets in the drop box on September 9, September 16, September 23, and September 30, and that her fiancé Douglas Barnes was with her each time. She denied telling Ms. McCants that she must have forgotten to turn her sheets in. She said she told Ms. McCants, "I did bring them in and put them in the box." RP at 43. Mr. Barnes similarly testified that he accompanies Ms. Maxwell when she drops off her weekly check-in sheets and was with her each time all through the month of September.

The court made findings reflecting the above testimony, including a specific finding that Ms. Maxwell did not turn in weekly check-in sheets for September 9, September 16, September 23, and September 30, 2015. In weighing witness credibility, the court found the State's witnesses did not have an interest in the case, but that Ms. Maxwell and Mr. Barnes did. The court found it was not believable that the Benton County Sheriff's Office lost four weekly transient check-in sheets in a row. The court

4

additionally determined "[t]he defendant's statement that she had forgotten is consistent with the testimony of Dianne McCants and Detective Mike Wilson." Clerk's Papers at 30 (Conclusion of Law 5). The court found Ms. Maxwell guilty of failure to register as a sex offender beyond a reasonable doubt. She appeals.

## DISCUSSION

Ms. Maxwell's sole contention on appeal is that her counsel gave her ineffective assistance by waiving a CrR 3.5 hearing and failing to move to suppress her custodial statements made to Ms. McCants—a state agent—without the benefit of *Miranda*[1] warnings.

We review claims of ineffective assistance of counsel de novo. *State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006). To prevail on an ineffective assistance claim, a defendant must satisfy the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, a defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Hendrickson*, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). Second, the defendant must show the deficient performance was prejudicial. *Id.* at 78. Prejudice occurs when it is reasonably probable that but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. We presume that the defendant received

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

adequate representation. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

As Ms. Maxwell points out, *Miranda* warnings must be given when a suspect endures custodial interrogation by an agent of the State. *State v. Sargent*, 111 Wn.2d 641, 647, 762 P.2d 1127 (1988) (citing *Miranda*, 384 U.S. at 444). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Sargent*, 111 Wn.2d at 650 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)). And *Miranda* "applies not only to law enforcement officers, but to any 'agent of the state' who 'testifie[s] for the prosecution' regarding the defendant's custodial statements." *State v. Heritage*, 152 Wn.2d 210, 216, 95 P.3d 345 (2004). Without *Miranda* warnings, a suspect's statements during custodial interrogation are presumed involuntary. *Id.* at 214 (citing *Sargent*, 111 Wn.2d at 647-48).

Ms. Maxwell contends, and the State does not dispute, that Ms. McCants was a state agent who elicited custodial incriminating statements about why she did not drop off her check-in sheets. Ms. Maxwell then asserts her statements are presumed involuntary under *Heritage* because they were not preceded by *Miranda* warnings, and thus her attorney performed deficiently by waiving a CrR 3.5 hearing and not moving to suppress the statements. She contends she was prejudiced by counsel's performance because the

6

trial court relied on her incriminating statements as substantive evidence in making its determination of guilt.

The State, on the other hand, contends counsel was not deficient for stipulating to admissibility of the statements and waiving a CrR 3.5 hearing because counsel's understanding at the time of the waiver was that Ms. Maxwell's statements were not in response to any interrogative questions. The State further contends Ms. Maxwell suffered no prejudice from counsel's performance in any event because the court found the State's witnesses credible and the evidence of guilt was overwhelming.

Both parties' contentions miss the mark. The trial court record contains no evidence whatsoever as to whether Ms. Maxwell received *Miranda* warnings before speaking with Ms. McCants. When an ineffective assistance claim is raised on appeal, the reviewing court may consider only facts within the record. *State v. McFarland*, 127 Wn.2d at 335. "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record." *Id.* Because the record is insufficient to permit our review of counsel's decision not to request a CrR 3.5 hearing or move to suppress the statements that Ms. Maxwell made to Ms. McCants, her ineffective assistance claim fails. *Id.* at 335.[2]

---

[2] When, as here, a defendant's claim of ineffective assistance depends on evidence or facts not in the existing trial record, the appropriate means of raising the issue is a personal restraint petition under RAP 16.4. *State v. McFarland*, 127 Wn.2d at 335.

Finally, we grant Ms. Maxwell's motion—supported by good cause and filed prior to this court's setting this case on the docket for decision—to enlarge the 60-day time period under our June 10, 2016 General Order to file a motion to deny appellate costs.

RAP 14.2 states, "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." Under RCW 10.73.160(1), we have broad discretion to grant or deny appellate costs to the prevailing party. *See State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612 (2016). Ms. Maxwell was declared indigent for purposes of this appeal. She has submitted proof of her continued indigency and additionally moves this court to exercise its discretion and deny the State appellate costs. The State has responded that it takes no position on Ms. Maxwell's motion and defers to this court. Given Ms. Maxwell's lack of assets and relatively large amount of outstanding legal financial obligations as shown on her report of continued indigency, she does not have the present ability to pay appellate costs. And given her felony criminal history and reported disabilities that may interfere with her ability to work, it is questionable whether she will have the future ability to pay. The State acknowledges that she may not have the ability to pay appellate costs. Accordingly, exercising our discretion, we grant Ms. Maxwell's additional motion and decline to award appellate costs to the State.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.