# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48169-3-II |
| Respondent, | |
| v. | |
| PATRICK E. LEWIS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Patrick E. Lewis appeals his jury trial conviction for second degree assault (domestic violence). Because Lewis fails to show that his counsel provided ineffective assistance, we affirm Lewis's conviction. We also decline to impose appellate costs.

## FACTS

### I. BACKGROUND

In March 2013, Ayesha Johnson called 911. She told the 911 operator that Lewis had assaulted and strangled her while she was in Lewis's car. Officer Scott Burnette reported to the scene, interviewed Johnson, and photographed finger and thumb marks on her neck. Police arrested Lewis, and the State charged him with second degree assault (domestic violence).

## II. TRIAL

The trial court granted Lewis's motion to exclude any "evidence, references to evidence, testimony, or argument relating to [Lewis's] prior criminal history." Clerk's Papers (CP) at 5.

Johnson testified at trial that she and Lewis had entered into a sexual relationship, which Johnson described as "dating," about eight years before trial. 1 Report of Proceedings (RP) at 77. Johnson also said that she and Lewis started a "romantic relationship" about three years before trial. 1 RP at 77. She later testified that they had a romantic relationship for a total of about one year. On cross-examination, Lewis attempted to clarify whether the romantic relationship was for eight years, as Johnson had earlier testified, or for one year. Johnson stated that "[Lewis] was incarcerated so it was an on-and-off relationship." 1 RP at 105. Lewis did not object to this reference to his previous incarceration, despite the pretrial ruling that barred any evidence of Lewis's criminal history.

On the night of the assault, Johnson and Lewis were sitting in Lewis's car, and Lewis choked Johnson. Johnson recalled that her head was on the car's armrest and that she was kicking the windshield while Lewis choked her with both hands. After Lewis let Johnson go, she tried to hit Lewis with her shoe. Johnson left Lewis's car and called 911.

The trial court admitted into evidence photographs of Johnson's neck taken the same day as the assault that showed red thumb and finger marks around her throat. The State played a recording of Johnson's 911 call for the jury. In the recording, Johnson said that Lewis had grabbed

Johnson by her hair and struck her head against his car's dashboard before he choked her.[1] Johnson was upset and sobbing in the recording.

The trial court also admitted screenshots of text messages between Lewis and Johnson after the assault. Johnson texted Lewis that her throat hurt so much that she could not swallow, and Lewis apologized and said that it was the "monster" in him. Ex. 6 at 20.

Officer Burnette testified that he interviewed Johnson the night of the assault. Johnson told Officer Burnette that Lewis pushed Johnson's head against the passenger window and then began choking her with one hand.

Lewis testified that Johnson was never in Lewis's car that night. Lewis claimed that Johnson wanted Lewis's assistance because she was fighting with someone and that Johnson became irate when Lewis refused to get involved. Johnson hit Lewis in the face with her shoe, and Lewis drove away. Lewis denied ever placing his hands on Johnson's neck. Lewis testified that he apologized by text message because he was sorry he was not able to help Johnson financially.

### III. Conviction and Sentence

The jury found Lewis guilty of second degree assault and that the assault was a domestic violence offense. The trial court sentenced Lewis to 47 months of confinement. Lewis requested waiver of legal financial obligations (LFOs) because his criminal history made it difficult to find employment—Lewis had not been employed for 13 years. The trial court found that Lewis was

---

[1] Johnson's trial testimony and statements to Officer Burnette conflicted with the 911 recording regarding some minor details. On cross-examination, Johnson stated that Lewis pulled her hair and that her head hit the passenger window.

indigent and not anticipated to be able to pay LFOs in the future. The trial court waived the discretionary LFOs and entered an order of indigency.

ANALYSIS

Lewis claims that it was ineffective assistance for his counsel not to move for a mistrial after Johnson said that her relationship with Lewis was "'on-and-off'" because of Lewis's incarceration. Br. of Appellant at 7. Lewis argues that the incarceration reference violated the trial court's pretrial ruling that evidence of Lewis's criminal history was inadmissible.[2] We disagree.

I. STANDARD OF REVIEW AND APPLICABLE LAW

A claim of ineffective assistance of counsel is a mixed question of fact and law that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). To prevail on such a claim, the defendant must show both that his counsel performed deficiently and that the defendant suffered prejudice as a result. *Jones*, 183 Wn.2d at 339. If the defendant fails to establish either element of the test, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

II. NOT DEFICIENT PERFORMANCE

Lewis argues that defense counsel's failure to move for a mistrial constituted deficient performance because his counsel had no legitimate reason not to seek a mistrial and address the incarceration reference outside the jury's presence. We disagree.

---

[2] Lewis assumes that the reference to "incarceration" violated the trial court's ruling excluding references to Lewis's "criminal history." Because no one argues that this comment falls outside the trial court's ruling, we consider Lewis's argument.

Deficient performance is that which "'falls below a minimum objective standard of reasonable attorney conduct.'" *Jones*, 183 Wn.2d at 339 (quoting *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993)). Legitimate trial strategy cannot be the basis for an ineffective assistance of counsel claim. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 694, 327 P.3d 660 (2014). We presume counsel was effective unless "there is no possible tactical explanation for counsel's action." *Cross*, 180 Wn.2d at 694. And we have held that "[w]e can presume counsel did not request limiting instructions to avoid reemphasizing damaging evidence." *State v. Dow*, 162 Wn. App. 324, 335, 253 P.3d 476 (2011).

Here, Lewis did not move for a mistrial or object following Johnson's reference to his prior incarceration. But had Lewis moved for a mistrial, his motion would not have been successful.[3] Defense counsel likely did not move for a mistrial following the incarceration reference because counsel could reasonably have believed that the mistrial motion would be denied. And at most, Lewis was likely to receive an instruction to the jury to disregard the incarceration reference. Defense counsel reasonably could seek to avoid such an instruction that would have only served to emphasize the reference. *See Dow*, 162 Wn. App. at 335.

Thus, defense counsel's decision not to move for a mistrial or otherwise address the incarceration reference was reasonably based on a legitimate trial strategy. Because defense counsel's failure to move for a mistrial did not fall below an objective standard of reasonable

---

[3] The incarceration reference was not the type of irregularity that would require the trial court to declare a mistrial because Lewis was not so prejudiced that nothing short of a new trial could insure the fairness of his trial. *See State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010).

attorney conduct, we conclude that Lewis's counsel's performance was not deficient. And because Lewis fails to establish deficient performance, our inquiry ends. *See Kyllo*, 166 Wn.2d at 862.

### III. APPELLATE COSTS

Lewis requests that we either decline to impose appellate costs or remand to the superior court to determine Lewis's ability to pay. The State responds that it has yet to submit a cost bill and that we should "wait until the cost issue is ripe, if it ever becomes so, before ruling on this issue."[4] Br. of Resp't at 12. We decline to impose costs.

We have broad discretion in deciding whether to grant or deny appellate costs to the prevailing party. Former RCW 10.73.160(1) (1995); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016). The ability to pay is a factor in our exercise of that discretion. *Sinclair*, 192 Wn. App. at 389. There is a presumption of continued indigency throughout review. RAP 15.2; *Sinclair*, 192 Wn. App. at 393.

The trial court imposed a 47-month sentence, found that Lewis was indigent, and waived all discretionary LFOs after Lewis explained that his criminal history had resulted in his being unemployed for the last 13 years. Given this finding of indigency, the length of his sentence, and his history of unemployment, it appears Lewis lacks the ability to pay his appellate costs. Thus, we exercise our discretion to decline the imposition of Lewis's appellate costs.

---

[4] We exercise our discretion to limit the commissioner's duty to impose costs in our decision terminating review. RAP 14.2.

No. 48169-3-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.

7