IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JUAN GARCIA-MENDEZ,<br><br>Appellant,<br><br>DARRESON CHESTER HOWARD,<br>and SOPHIA ALEEN DELAFUENTE,<br>and each of them,<br><br>Defendants. | No. 74110-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: February 13, 2017 |

2017 FEB 13 AM 9:56
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

BECKER, J. — Appellant Juan Garcia-Mendez was convicted of shooting a town car driver and unlawful possession of a firearm. Any prejudice caused by the prosecutor's improper remark in closing argument that the assault was "easily an attempted murder" was curable if there had been an objection. We affirm the conviction. The case is remanded for the trial court to correct a conceded error in the sentence.

FACTS

According to Richard Powell's testimony at trial, on the night of April 1, 2013, he was working as a town car driver. Powell, the victim of a previous robbery, carried a gun in case he was robbed again. After dropping off a

customer, he decided to take a break. He pulled the car over, got out, and lit a cigarette. Someone approached him with a gun pointed at him and said, "'Empty your pockets.'" He reached for his gun: "I remember reaching for my gun as a direct response to seeing a gun pointed at me."

There was an exchange of gunfire. Powell was almost killed by three shots to his chest. The man who shot him was later identified as appellant Juan Garcia-Mendez. Garcia-Mendez sustained less serious injuries from the shots fired by Powell.

The State charged Garcia-Mendez with assault in the first degree and unlawful possession of a firearm in the first degree. For the purpose of sentence enhancement, the State alleged that Garcia-Mendez was armed with a firearm at the time of the assault and that both crimes involved the aggravating circumstance that Garcia-Mendez committed the offenses shortly after being released from incarceration.

The trial lasted for approximately seven days in July and August 2015. Powell testified as described above. The State presented a surveillance video that captured the shooting from the vantage point of a nearby business. A detective with specialized training in video forensic analysis offered his opinion that the video showed Powell firing the second gunshot but not the first. The State presented DNA evidence that blood found in a trail near Powell's body, and the blood and biological material found on a bullet at the end of the trail, belonged to Garcia-Mendez. Garcia-Mendez's cellmate testified he was told by Garcia-Mendez that on the night of the incident, he and some friends decided

2

they "wanted to go out and rob and do some damage to some people." According to the cellmate, Garcia-Mendez said he and one of his friends saw a cab driver leaning against his car, approached him with their guns drawn, saw the cab driver had his own gun, "and all of a sudden the shooting started."

Garcia-Mendez did not testify or present any witnesses. He defended on the ground that the evidence was insufficient to identify him as the shooter. Alternatively, he claimed self-defense. He also argued that the evidence proved at most the lesser included offense of second degree assault.

The jury found Garcia-Mendez guilty on both counts and returned special verdicts supporting the sentence enhancements. The court imposed a total sentence of 400 months.

PROSECUTORIAL MISCONDUCT

Garcia-Mendez appeals. He alleges prosecutorial misconduct in argument.

To prevail on a claim of prosecutorial misconduct, the defendant bears the burden of showing both improper conduct and resulting prejudice. State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). We review a prosecutor's closing arguments in the context of the total argument, the issues in the case, the evidence addressed in the argument and the jury instructions. McKenzie, 157 Wn.2d at 52.

Garcia-Mendez failed to object at any point during the prosecutor's closing argument or rebuttal. Therefore, he has waived the issue of misconduct unless the misconduct is so flagrant and ill-intentioned that no instruction could have

3

cured the prejudice. See State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). Our review focuses less on whether the prosecutor's misconduct was flagrant or ill-intentioned and more on whether the resulting prejudice could have been cured. Emery, 174 Wn.2d at 762.

### "Attempted murder" remark

The first degree assault conviction required proof that the defendant had the "intent to inflict great bodily harm." RCW 9A.36.011(1). The lesser included offense of second degree assault required proof that the defendant intentionally assaulted another and thereby recklessly inflicted substantial bodily harm. RCW 9A.36.020(1)(a).

Garcia-Mendez argued in closing that the evidence was insufficient to show that he acted with the intent to inflict great bodily harm. In rebuttal, the prosecutor argued that intent to inflict great bodily harm was demonstrated by the fact that Powell was shot three times at point-blank range with the shots clustered on his chest:

> Now, is this easily an attempted murder? Yeah. But we made it easy for you. Assault in the first degree. Intent to inflict great bodily harm. Juan Garcia-Mendez acted with that intent when he shot Mr. Powell three times at point-blank range in the chest. And he did so with a firearm. And he did inflict great bodily harm.
> . . . .
> Your job is, what does the evidence prove? And what reasonable doubt, if any, exists? And in some cases like this, the evidence is overwhelming. And the ultimate decision for you is a difficult one, heavy-hearted one and a serious one, but at the end of the day—at the end of the day, it's a no-brainer. You stand there, and you shoot a man in the chest three times, and you didn't intend to inflict great bodily harm?

4

Garcia-Mendez contends that the prosecutor's comment suggesting that he committed attempted murder is reversible error because it referred to an uncharged crime and was designed to arouse a visceral response from the jury. He relies on a case where a conviction for child molestation was reversed because the prosecutor, without objection, repeatedly referred in argument to dismissed rape counts and suggested that those counts were supported by the child witness's out-of-court statements that were not admitted into evidence. State v. Boehning, 127 Wn. App. 511, 519-23, 111 P.3d 899 (2005).

As the State concedes, it was misconduct for the prosecutor to refer to attempted murder, an uncharged crime. But taken in context, the remark was not incurably prejudicial. The prosecutor was directly responding to the argument by Garcia-Mendez that there was insufficient evidence of intent to inflict great bodily harm.

The jury heard evidence that Powell was shot three times in the chest. An emergency medicine physician testified that Powell was in "full trauma mode," "actively dying," and "it's basically a miracle he's alive." Garcia-Mendez has not shown how the prosecutor's one isolated reference to attempted murder was more inflammatory than the other evidence properly before the jury about how Powell was shot and nearly died. Nor has he shown that the remark about attempted murder diverted the jury's attention away from reaching a verdict based on the evidence.

The prosecutor in Boehning insinuated there was evidence the jury did not hear that would have supported convicting the defendant of the more serious

5

charge of rape. Here, the prosecutor referred only to evidence the jury did hear—the gunshots. The prosecutor did not suggest the defendant had committed bad acts in addition to those already before the jury, but rather stated an alternative charge the State could have pursued based on the same conduct. The prejudice inherent in the single "attempted murder" remark is far less than the prejudice caused by the prosecutor's extended remarks in Boehning.

Garcia-Mendez contends the suggestion that the offense was "easily an attempted murder" was an improper statement of the prosecutor's personal opinion that he was guilty. For this argument, we look at the statement in context and do not hold that prejudicial error has occurred unless it is "clear and unmistakable" that the prosecutor is expressing a personal opinion. McKenzie, 157 Wn.2d at 53-54. The prosecutor used the evidence of the three shots clustered on Powell's chest as compelling evidence amply supporting the charge of first degree assault. This was not a "clear and unmistakable" expression of a personal opinion.

Garcia-Mendez contends the remarks that the crime was "easily an attempted murder," "we made it easy for you," and "it's a no-brainer" trivialized the State's burden of proof. Again, this objection was not raised at trial. The prosecutor emphasized that the State carried the burden of proof beyond a reasonable doubt and the jury was so instructed. Because the challenged remarks were made in the context of an argument otherwise well-grounded in law and in evidence properly before the jury, we conclude that any resulting prejudice could have been cured had there been an objection.

6

Proof of Intent

The court gave the jury a standard first aggressor instruction:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Under this instruction, to determine whether the defendant was the aggressor, the jury had to consider his acts or conduct at the time of the confrontation. Garcia-Mendez contends the prosecutor misstated the law and misled the jury by focusing instead on his state of mind earlier that evening when he decided to go out with his friends.

In her initial closing argument, the prosecutor used the cellmate's testimony as a basis for arguing that Garcia-Mendez and his friends went out on the night of the assault "looking to rob some people and hurt some people and do some damage." The prosecutor began the rebuttal argument by describing the defendant's "intent that day" as the key issue both to determine whether he was the primary aggressor and whether he intended great bodily harm rather than merely acting recklessly:

> The key issue here is what did Mr. Garcia-Mendez intend. Because the intent, his intent that day, is what determines was he the primary aggressor and did he intend great bodily harm. Rather than recklessly inflicting substantial bodily harm.

The prosecutor did not commit misconduct by asking the jury to evaluate the defendant's conduct in light of what was known about his state of mind "that day." The prosecutor continued the rebuttal argument by summarizing the

7

evidence from the video showing that the defendant accosted Powell, not the other way around, and shot him three times in the chest. Read in context, the challenged remark was not a misstatement of the law.

<u>"Bring him to justice"</u>

The prosecutor stated in closing that it was a miracle that Powell was alive and able to testify. She said, "Now it's time to bring him justice." Garcia-Mendez contends this remark was reversible misconduct under <u>State v. Echevarria</u>, 71 Wn. App. 595, 598, 860 P.2d 420 (1993) (improper references to the war on drugs, with oblique analogies to the Gulf War and the Vietnam War, were a deliberate appeal to the jury's passions and prejudice), and <u>State v. Bautista-Caldera</u>, 56 Wn. App. 186, 783 P.2d 116 (1989) (improper to exhort the jury to send a message to society about the general problem of child abuse; argument should be based solely on the evidence), <u>review denied</u>, 114 Wn.2d 1011 (1990). The argument here was not analogous to these cases. The prosecutor asked the jury to bring the specific victim in this case justice without invoking societal concerns or trends.

In summary, while it was misconduct to argue that the assault was "easily an attempted murder," there was no objection and the prejudice was not incurable. We reject Garcia-Mendez's claim of prosecutorial misconduct.

We also reject his effort to overcome the lack of objection by recharacterizing the issue as whether defense counsel provided ineffective assistance by failing to object. Review under the standards for prosecutorial misconduct is sufficient to determine whether the prosecutor's remarks warrant

reversal. The cases cited by Garcia-Mendez do not support the notion that prosecutorial misconduct implicates the ineffective assistance of counsel doctrine. State v. Fisher, 165 Wn.2d 727, 756 n.8, 202 P.3d 937 (2009). Defense counsel's failure to object during a prosecutor's closing argument will generally not constitute deficient performance because lawyers do not commonly object during closing argument absent egregious misstatements. In re Pers. Restraint of Cross, 180 Wn.2d 664, 721, 327 P.3d 660 (2014), quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 717, 101 P.3d 1 (2004).

## SENTENCING ERROR

The parties agree that the trial court mistakenly added the 60-month firearm enhancement twice. Because it is not clear that the trial court would impose the same exceptional sentence when the firearm enhancement is imposed correctly, we remand to the trial court for resentencing.

## APPELLATE COSTS

The State does not respond to the request made by Garcia-Mendez in his opening brief not to impose appellate costs. Having considered the nonexclusive factors in State v. Sinclair, 192 Wn. App. 380, 385, 388, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016), we exercise the discretion provided by RCW 10.73.160(1) and waive the imposition of appellate costs.

Affirmed and remanded for resentencing.

Becker, J.

WE CONCUR:

Spearman, J.

Dwyer, J.