# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46965-1-II |
| Respondent, | |
| v. | |
| STACY MILTON THORNTON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Stacy M. Thornton appeals his conviction for first degree trafficking in stolen property.[1]  Thornton argues that he received ineffective assistance of counsel because (1) his attorney failed to object to impermissible propensity evidence regarding the culture of homeless drug addicts and (2) his attorney failed to object to an officer's impermissible opinion on his guilt. Thornton fails to establish that his counsel's performance was deficient in not objecting to the evidence regarding the culture of homeless drug addicts and he fails to establish prejudice based on his counsel's failure to object to the officer's testimony.  Accordingly, we affirm Thornton's conviction.  We also exercise our discretion and waive appellate costs.

---

[1] Thornton was also convicted of one count of bail jumping.  He does not appeal the bail jumping conviction.

## FACTS

On January 2, 2014, Thornton pawned a platinum ring with a two and a half carat diamond. Detective Chris Johnstone of the Olympia Police Department identified the ring as a piece of property stolen during a recent burglary. After investigation, Johnstone learned that Thornton had obtained the ring from Marcus Hodnett. Johnstone arrested Hodnett for burglary and Thornton for trafficking in stolen property.

The State charged Thornton with first degree trafficking in stolen property.[2] Thornton's jury trial began on November 17, 2014.

Detective Johnstone testified that during his investigation he interviewed Hodnett. During the interview, Hodnett described in detail both the burglary and the pawn of the ring. And, all of the information Hodnett provided to Johnstone was consistent with the rest of Johnstone's investigation. During Johnstone's testimony, the following exchange took place:

> [STATE]: Detective, without referring to the information that you gathered during your interviews with either individual, what was your opinion as to the role that the defendant had regarding the pawning of the ring, if any?
>
> [JOHNSTONE]: I believe that he had knowledge that it was stolen and that he pawned the item at Cash Northwest knowing that the item was stolen.

1 Report of Proceeding (RP) at 46.

Marcus Hodnett also testified at Thornton's trial. Hodnett testified that he had first met Thornton in work release in 2012. In 2013, Hodnett and Thornton were both homeless in downtown Olympia. In December, both Hodnett and Thornton were staying in the abandoned Thurston County Housing Authority building. Hodnett also testified that he and Thornton

---

[2] RCW 9A.82.050.

sometimes used drugs together. And, Hodnett testified that committing thefts and burglaries to support his drug habit "was a regular, daily thing[.]" 1 RP at 55.

Hodnett asked Thornton to pawn the ring for him because he did not have any identification. And, Hodnett testified that he told Thornton that he had stolen the ring during a burglary. Hodnett and Thornton first brought the ring to a jeweler in Yelm. However, the jeweler did not have cash on hand to buy the ring that day, so Hodnett and Thornton decided to pawn the ring instead. They pawned the ring for $1,000. Hodnett gave Thornton $200. Hodnett testified that Thornton was upset about only getting $200 and wanted half because he was taking a risk pawning stolen property.

Kelly Olsen also stayed in the Housing Authority building with Hodnett and Thornton in December 2013. Olsen testified that at the time she was also homeless and addicted to drugs. Olsen testified she paid for her habit by "committing various crimes, usually those related to theft." 1 RP at 168-69. Then, she would either trade stolen property to drug dealers or pawn the property for cash. She testified that this was an extremely common experience "[a]mong drug users, especially homeless, but all in my experience." 1 RP at 169. Olsen also testified that Thornton knew the ring was stolen when he agreed to pawn it.

Thornton testified that Hodnett said that the ring belonged to his grandfather. According to Thornton, he did not know the ring was stolen until Olsen told him approximately a week after he pawned it. Thornton admitted that he was "aware that people steal things in order to get money for drugs." 2 RP at 226.

3

The jury found Thornton guilty of first degree trafficking in stolen property. Thornton appeals.[3]

ANALYSIS

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Our scrutiny of counsel's performance is highly deferential; there is a strong presumption of reasonableness. *McFarland*, 127 Wn.2d at 335. To rebut this presumption, a defendant bears the burden of establishing the absence of any conceivable trial tactic explaining counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent the deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). If a defendant fails to establish either deficiency or prejudice, the ineffective assistance of counsel claim fails. *Strickland*, 466 U.S. at 697.

When a defendant bases his ineffective assistance of counsel claim on counsel's failure to object, the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). Generally, we consider the decisions of whether and when to object as a "classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763,

---

[3] In addition to his claims of ineffective assistance of counsel, Thornton originally assigned error to legal financial obligations. However, Thornton withdrew his argument because the trial court did not impose discretionary legal financial obligations.

770 P.2d 662 (1989).  It is a legitimate trial tactic to forego an objection to avoid highlighting certain evidence.  *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

## I.  EVIDENCE OF HOMELESS, DRUG USER CULTURE

Thornton claims that he received ineffective assistance of counsel because his counsel failed to object to Hodnett's and Olsen's testimony that theft was common among homeless drug addicts.  According to Thornton, this evidence was improper propensity evidence under ER 404(b).  But, Thornton is mistaken about the application of ER 404(b) here.  ER 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character or a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, *knowledge*, identity, or absence of mistake or accident.

(Emphasis added.)  The language of ER 404(b) explicitly permits the use of prior acts to prove knowledge, and the State used the evidence to prove that Thornton knew the ring was stolen when he pawned it.  Because the evidence was admissible under ER 404(b), the trial court would not have sustained an objection to the admissibility of the evidence.  Therefore, Thornton has failed to demonstrate that his counsel's performance was deficient for failing to object to the evidence regarding the culture of theft among homeless drug addicts.  Because Thornton has failed to establish deficient performance, his ineffective assistance of counsel claim fails.

## II. OFFICER'S OPINION ON GUILT

Thornton also argues that he received ineffective assistance of counsel because his counsel failed to object to Detective Johnstone's opinion testimony that Thornton knew the ring was stolen. We assume, without deciding, that the failure to object was deficient performance, but Thornton cannot meet his burden to demonstrate prejudice. Therefore, his ineffective assistance of counsel claim fails.

Here, it was undisputed that Thornton pawned the ring for Hodnett. And, it was undisputed that Hodnett stole the ring. The only issue was whether Thornton knew the ring was stolen when he sold it. Thornton argues that Detective Johnstone's testimony was prejudicial because it expressed an opinion on the ultimate issue for the jury. But, the State also presented evidence from Hodnett and Olsen that Thornton had direct knowledge that the ring was stolen when he agreed to pawn it for Hodnett.

And, even if the jury did not believe the evidence that Thornton had direct knowledge that the ring was stolen, the jury is permitted to infer knowledge when "a person has information that would lead a reasonable person in the same situation to believe that a fact exists[.]" Clerk's Papers (CP) at 125; RCW 9A.08.010(1)(b)(ii). The State presented extensive circumstantial evidence inferring knowledge including Hodnett and Olsen's testimony that it was common for homeless drug addicts to steal and then pawn stolen property to pay for drugs. Thornton also admitted that he was aware this was a way people often paid for drugs. And, Thornton knew Hodnett was homeless and had used drugs with him on occasion. Accordingly, the State presented evidence that would also allow the jury to infer knowledge without relying on Detective Johnstone's opinion.

Because the State presented both direct and circumstantial evidence proving that Thornton had knowledge that the ring was stolen, there is not a reasonable probability that the outcome of the trial would have been different if Thornton's counsel had objected to Detective Johnstone's opinion testimony. Therefore, Thornton cannot establish prejudice. Because Thornton cannot establish prejudice, his ineffective assistance of counsel claim fails.

Thornton has failed to establish ineffective assistance of counsel based on either (1) his counsel's failure to object to the evidence regarding the culture of homeless drug addicts, or (2) Detective Johnstone's opinion testimony.

### III. APPELLATE COSTS

Thornton also opposes an award of appellate costs to the State in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612 *review denied*, 185 Wn.2d 1034 (2016), asserting that he lacks the ability to pay such costs if imposed. The trial court entered an order of indigency for Thornton's appeal on December 2, 2014. Under RAP 15.2(f), this court presumes that Thornton remains indigent throughout review of his appeal unless the trial court finds that his financial situation has improved. Therefore, we elect to exercise our discretion under RCW 10.73.160(1) and waive the imposition of appellate costs.

We affirm Thornton's conviction, and we also waive appellate costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

WORSWICK, J.